[Civ. No. 4634. Fourth Dist. May 26, 1953.]

LYN HOOVER, Appellant, v. COUNTY OF KERN, Respondent.

West, Vizzard, Howden & Baker for Appellant.

Borton, Petrini, Conron & Brown for Respondent.

BARNARD, P. J.—This is an action for personal injuries sustained by the plaintiff when her automobile struck a depression in a street in a new subdivision in county territory. She sued the county and the owners of the subdivision. The county's demurrer to an amended complaint was sustained without leave to amend. Judgment in favor of the county followed, from which the plaintiff has appealed.

The amended complaint alleges that the defendants Curran were the owners of certain real property in the defendant county which was not within the boundaries of any municipality; that on December 27, 1949, they caused to be submitted to the board of supervisors a subdivision map embracing

said property, which was prepared in the manner prescribed by law; that on December 27, 1949, the board of supervisors approved this map and ordered it recorded, and further ordered that the streets shown upon said map and therein offered for dedication "be and the same are accepted for public use"; that this map was recorded on December 29, 1949; that concurrently with the adoption of this order the board of supervisors entered into a contract with the defendant Roland Curran by which he agreed to improve the streets in this tract; that Curran furnished bonds conditioned upon the faithful performance of the contract; that Curran, in performing said contract, negligently left a large depression at a certain street intersection which frequently became concealed by standing water; that this dangerous and defective condition existed on November 19, 1951, and prior thereto; that from and after September 10, 1951, the board of supervisors had knowledge of this defective condition and failed to remedy it or to take action reasonably necessary to protect the public; that on November 19, 1951, the plaintiff, while operating her automobile, struck this depression while it was concealed by standing water, as a result of which she suffered certain injuries; and that on January 14, 1952, the board of supervisors adopted an order accepting the street work in question. The contract referred to in the complaint provided that the street work should be done in accordance with certain specifications, provided for an inspection to see that it met the requirements, and provided that "before making application for acceptance of the work" the contractor should furnish satisfactory evidence as to certain material used.

The controlling question here is as to the meaning and effect of section 11611 of the Business and Professions Code, which is a part of the "Subdivision Map Act." The preceding section provides when the final map of a subdivision may be filed for approval. The first paragraph of section 11611 provides that the governing body shall then approve the map within 10 days if it conforms to the requirements. The second paragraph reads:

"The governing body shall at that time also accept or reject any or all offers of dedication and shall, as a condition precedent to the acceptance of any streets or easements, require that the subdivider, at his option, either improve or agree to improve the streets or easements in accordance with

standards established by such governing body by local ordinance.''

The next section provides for a bond in connection with the work agreed to be done, and section 11614 provides that upon the execution of such a contract by the subdivider and the posting of the bond, the map shall be accepted for recording.

The appellant contends that the dedication of these streets for public use became complete on December 29, 1949, when the offer of dedication was accepted by the board and when the map was recorded; that the completed dedication placed the duty of maintaining the streets on the county at that time; and that the county could not evade liability for injuries caused by disrepair of the streets by delegating the responsibility for fixing the streets to a contractor. Reliance is placed on such cases as *Bosqui* v. *City of San Bernardino,* 2 Cal.2d 747 [43 P.2d 547]; *Shea* v. *City of San Bernardino,* 7 Cal.2d 688 [62 P.2d 365]; and *Mulder* v. *City of Los Angeles,* 110 Cal.App. 663 [294 P. 485], in which it was held that the cities had control over the streets in question.

The question of who has control over a street at the time involved is usually an important element in determining liability. (*Gibbons* v. *City of San Bernardino,* 108 Cal.App.2d 33 [238 P.2d 115].) ▮ One of the main purposes of the Subdivision Map Act seems to be to require the subdivider to do the original work of placing the streets in a proper condition before the maintenance thereof is taken over by a city or county, and to relieve the public to this extent of the burden that would otherwise exist. ▮ Section 11611 requires the board to approve the map within 10 days, if the preliminary steps have been properly taken, and requires the board to accept or reject any offer of dedication at the same time. But it also provides that, as a condition precedent to the acceptance of any streets, the board shall require the subdivider to either improve or agree to improve the streets in accordance with established standards. Not only is this acceptance of the streets made conditional by statute, but it necessarily follows that a further and later acceptance of the work is necessary since it must later be determined whether or not the work has been done in accordance with the standards established. The contract here recognized this and provided for an inspection of the work and for the furnishing of satisfactory evidence before an application for acceptance of the work was made. The work here was not

accepted by the board until some two months after this accident happened. In the meantime, the subdivider was in control of the streets. ██ The acceptance which the board is required by section 11611 to make in advance, being a conditional one, it would be unreasonable to interpret that section as intended to mean that the condition was met and the acceptance complete when the subdivider agreed to do the work. Under that section, reasonably interpreted, we think the acceptance of the street remains conditional until the work itself has been completed and accepted as being in accordance with the standards established by the governing body.

██ The statute makes a distinction between a ''dedication'' and an ''acceptance'' of streets and while the dedication may be said to be complete when it is accepted by the board, as required in the first paragraph of the statute, the doing of the work is a condition precedent to the acceptance of the streets. It naturally follows that the responsibility and liability of the governing board for the maintenance of the streets in a proper condition does not attach until the completion of the street work and its acceptance by the board.

██ The legal situation is not altered because of the fact that the order adopted by the board of supervisors on December 27, 1949, approving this map and ordering it to be recorded, also contained a further order that the streets shown upon this map and therein offered for dedication ''are hereby accepted for public use.'' The board had no authority to accept the streets at that time other than conditionally, as provided in section 11611, and the provisions of the statute control. (*County of San Diego* v. *California Water & Tel. Co.*, 30 Cal.2d 817 [186 P.2d 124, 175 A.L.R. 747].)

██ A cause of action was not stated and could not be stated as against the defendant county, and its demurrer was properly sustained without leave to amend.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.