[Civ. No. 9729. Third Dist. Jan. 27, 1960.]

COUNTY OF TUOLUMNE, Respondent, v. WILLIAM
CROOK et al., Appellants.

James H. Phillips and William C. Coffill for Appellants.

Scott K. Carter, District Attorney, and Edwin C. Saunders, Deputy District Attorney, for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment which enjoined appellants from interfering with the use by the public of a road which crosses their ranch. The county brought the action, alleging that the road was a public road and that the defendants were interfering with its use. By their answer defendants denied the road was a public road. By their cross-complaint they asked that their title be quieted against the county in respect to its claims. The trial court made the following findings:

"That there is in existence and use a roadway of sufficient width to accommodate the passage of a standard motor vehicle of the character of passenger car or standard truck, which said roadway traverses a course *beginning* approximately at the northerly end of the county owned and maintained county road (belonging to the County of Tuolumne Road System) running from Groveland in said County, State of California, known as the 'Phelan-Mogan Road', and in a general northerly direction to defendants and cross-complainants' lands (described in the Answer and Cross-Complaint on file here); *thence* in a general northerly direction on the east side of the fence fencing the lands of defendants, and cross-complainants along said fence line to a wooden gate in said barbed wire fence, which said wooden gate closes and attaches to a large pine tree; and which is located on the lands of defendants and cross-complainants described as aforesaid and more particularly in Section 9, T. 1 S., R. 16 E., M.D.B. and M.; *thence* through said gate in a general northwesterly direction across said Section 9, and a portion of Sections 8, 5 and 6 of said T. 1 S., R. 16 E., M.D.B. and M. to the northerly boundary of said lands of defendants and cross-complainants . . . and which said road is commonly known as the 'Mohican Mine Road'; (and from which point after leaving defendants and cross-complainants' lands said road traverses Section 6 of T. 1 S., R. 16 E., M.D.B. and M., and portions of Sections 31 and 32 of T. 1 N., R. 16 E., M.D.B. and M., as a road, to the Mary Ellen Mine, and from said Mary Ellen Mine traverses and continues as a trail through the Mohican Mine property to a footbridge crossing the Tuolumne River in Section 32, T. 1 N., R. 16 E., M.D.B. and M., all in Tuolumne County, California.)

"That beginning about 1901 or 1902 and for many years thereafter the public continuously used said roadway and trail openly, notoriously, adversely to the owners of the lands it crossed and under claim of right thereto for the purposes

of hauling of goods in and out, the transportation of miners and laborers, and by the sportsmen for the purpose of hunting, fishing, packing and horseback riding.

"That said open and notorious use of said road continued during the ownership of said ranch continuously through the ownership of defendants' predecessors in interest, including Mrs. Nora Mogan, who owned the same until 1941, and Mr. James H. Phillips who owned the same until 1952, without interruption of the use thereof save by unlocked gates, and 'no hunting or trespassing' signs, until October, 1954. That in October of 1954, defendants and cross-complainants locked said wooden gate at the pine tree above described, claiming said road to be a private way and permission revocable.

"That defendants and cross-complainants continued to keep said gate locked until the filing of the complaint herein and the issuance of the temporary restraining order herein, which has since become a temporary injunction."

The court drew conclusions of law that the Mohican Mine Road, approximately 10 feet in width as it traverses the land of defendants and cross-complainants, was dedicated to the usage of the public and that the dedication was accepted by the public by usage thereof; that the right of the public to use the road had never been abandoned or lost; that the maintenance of a lock by defendants upon any gate closing the road as it traverses lands of defendants and cross-complainants constituted a public nuisance which should be abated.

Defendants and cross-complainants, hereinafter called appellants, contend generally that the evidence is insufficient to support the court's findings and conclusions that the road in question was a public road; that the evidence is insufficient to support the finding that the road had never been abandoned as a public road; that the county's cause of action was barred because commenced more than five years after it arose.

The latest comprehensive statement by the Supreme Court on the subject of public roads, rights to which became vested in the public by user, is contained in *Union Transportation Co.* v. *Sacramento County*, 42 Cal.2d 235 [267 P.2d 10]. [██] Therein it was held: 1. That a common-law dedication has been described as "a voluntary transfer of an interest in land . . . which partakes both of the nature of a

494

grant and a gift and is governed by the fundamental principles which control such transactions.'' 2. That ''essential to such a dedication are an offer by the owner of the land clearly and unequivocally indicated by his words or acts to dedicate the land to a public use and an acceptance by the public of the offer.'' 3. That ''many cases hold that an offer to dedicate land may be inferred from the owner's long acquiescence in public use of the property which negative the idea the use was under a license.'' 4. That ''in another line of decisions by analogy to the doctrine of prescription, it is held that '[w]hen the public or such portion of the public as had occasion to use a road has traveled over it for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by anyone, a conclusive presumption of dedication to the public arises.' ''

 5. That ''where the dedication of a highway is sought to be established by user it must be shown that the use is adverse, continuous and with the knowledge of the owner for the required period of time''; that ''whether the user was adverse is a question of fact to be determined from all the circumstances of the case.'' The court went on to say that the distinction between the two methods by which dedication of land to public use might be proved had been well stated in *Schwerdtle* v. *County of Placer*, 108 Cal. 589 [41 P. 448]. Quoting from that decision the court said: '' '. . . If a dedication is sought to be established by a use which has continued a short time—not long enough to perfect the rights of the public under the rules of prescription—then truly the actual consent or acquiescence of the owner is an essential matter, since without it no dedication could be proved and none would be presumed; but where this actual consent and acquiescence can be proved, then the length of time of the public use ceases to be of any importance, because the offer to dedicate, and the acceptance by use, both being shown, the rights of the public have immediately vested.

 '' 'But where the claim of the public rests upon long-continued adverse use, that use establishes against the owner the conclusive presumption of consent, and so of dedication. . . .' Dedication by adverse user has been characterized as one implied by law; one inferred from the acts of the owner or from his acquiescence in public user may be termed a dedication implied in fact.''

 The adverse character of the use may be inferred

from circumstances. (*Diamond Match Co.* v. *Savercool,* 218 Cal. 665, 669 [24 P.2d 783].)

We turn now to the evidence.

One Gookin, a witness called by the county, testified as follows: I have resided in Tuolumne County about 47 years and in the Groveland area about 40 years. I am familiar with the Mogan ranch now owned by defendants and with the Mohican Mine road. I leased defendants' property for about 5 years from 1948 on. During those years the road was used by other persons without my permission. I felt I had no right to stop them. I never locked the gate across the road. Before my lease I saw other people, not the owners, using the road going to the Mohican Mine. A lot of them went through there. I have passed them on the road, lots of deer hunters, fishermen and miners going down to the mine went through. In deer season I might see 7 or 8 cars going through on weekends, maybe more. During the fishing season 4 or 5 cars per weekend would go through. Before my lease I used the road without permission. The first time the gate was ever locked was in 1954. The road goes to the Mohican Mine where there is a foot bridge over the Tuolumne River. The bridge is now in disrepair. I leased the ranch from Mr. Phillips who told me the gate could not be locked. I did not want people traveling through the ranch while I leased it because of the danger of fire and of somebody killing my cattle. I argued the matter out with Mr. Phillips, but he said I could not lock the gate going through to the Mohican Mine. He told me that it was a public road. I don't know where the people traveling the road were going. I never asked them, it wasn't any of my business. The road goes through the ranch property for about a mile and a half. I never saw anybody repair the road. It used to get in bad condition, but you could get over it. If you were without chains you might get stuck. You could always get over it. I have been familiar with the road since 1930.

One Frank DeFerrari, also a county witness, testified as follows: I have lived in Tuolumne County 70 years and in the Groveland area 67 years. I am familiar with the defendants' ranch, formerly the Mogan ranch, and with the Mohican Mine road which I have known for 51 years. The Mohican Mine road for more than 30 years has had the common reputation of being a public road. At one time there were signs about every mile and a half, reading "Mohican Road." I first went down the road in 1901 with vegetables for the mine. The last

part was nothing but a trail. Three or four years later they built a road going down to the mine. Thereafter the forest service graded it and cleaned it out. I estimate I went over the road 500 times in my life. I never asked permission. I understood it was a public road. I don't know who built the road across the defendant's ranch, that was before my time. All I know is it is a public road. It must have been built years and years ago. The Mohican Mine no longer operates and hasn't since about 1912 when they moved all their machinery out. There were other mines, but they are not running. No mine can run now with the price of gold. I think none have operated since 1940, except for assessment work. To my knowledge the Mohican Mine road has had a common reputation of being a public road for 57 years. Other people and miners have roads in the county. I worked on the road through defendants' ranch. We opened up drains wherever necessary. We just used a pick and shovel a part of a day. I and numerous friends used to go along the road to the Mohican Mine to fish. We never asked permission. I did not know who the owner was.

Carlo DeFerrari, a witness for the county, testified as follows: I have lived in the Groveland area since 1943. I have been over the Mohican road 300 or 400 times in my life and I have at numerous times seen other people on the road. I went over without permission. I never considered permission on the Mohican road. If I had been told I couldn't go over it I would have gone over it anyhow. When I go over the Mohican road I would no more ask permission than to go down the state highway. Joe Cassaretto had the ranch in 1937. He didn't let anybody hunt it. We went over the road in defiance of him and he didn't dare stop us. We told him we were going over it whether he liked it or not. He didn't want anybody going down the road, but we went in defiance of him. The first time we went down there in defiance of him was in the late thirties, probably '39 or '40. We went over the road and hunted beyond the ranch.

The foregoing is not a complete statement of the testimony and the record shows there was considerable conflict as to the public character of the road, but under the familiar rule we must on appeal accept the evidence that supports the judgment. We think it clear that the evidence meets the test stated in the authorities we have cited and that from the testimony the court could hold the road was a public road. The court's findings to that effect are substantially supported. The

same evidence of continued use negatives the contention of abandonment and limitation of action.

The trial court made the following findings:

"In 1942 or thereabouts defendants' predecessor, Mr. James H. Phillips, made some changes in the location of that portion of the road near the fence above described and moved the entrance from a wire gate near a live oak approximately 100 yards north of the present gate, southerly to the location of the present gate, installed the same and constructed a section of roadway from said gate in a general northwesterly direction so as to join up with the older portion of the road at a point several hundred yards northwesterly from the gate; the new gate was not locked by Mr. Phillips and the re-routing of the road was done for the greater convenience of the occupants of the land (Mr. Phillips).

"As rerouted, members of the public continued to use the road as previously, without interference or restraint until 1954."

The "present gate" referred to in the foregoing findings is the one which appellants locked, which act precipitated this litigation. Before Mr. Phillips made the described changes the road had followed in part a different route. Appellants contend that this partially different route was the only public way, that the new road with its new gate was private and never became a part of the public road, and that the finding it constitutes a part of the public way is without support in the record. We do not agree. The evidence addressed to this issue was to the effect that this new piece of road was made to prevent people from leaving the old road and cutting across a field; that Mr. Phillips told the witness Gookin, who had the property under lease after the new road had been built, that he wanted the public to use the new road and that if Gookin saw people taking the old road he was to direct them to use the new. Gookin testified that while he was there most of the public did use the new road. There was other testimony to the same effect and the proof was sufficient to show dedication of the new road by offer and acceptance.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.