[Civ. No. 265.   Fifth Dist.   Dec. 4, 1963.]

COUNTY OF KERN, Plaintiff and Respondent, v. EDGEMONT DEVELOPMENT CORPORATION et al., Defendants and Appellants.

Mack, Bianco, King & Eyherabide and D. Bianco for Defendants and Appellants.

Ralph B. Jordan, County Counsel and Warren C. Wetteroth, Deputy County Counsel, for Plaintiff and Respondent.

BROWN (R.M.), J.—This appeal originated in an action brought by the plaintiff-respondent, County of Kern (hereinafter County), against defendants-appellants, Edgemont Development Corporation (hereinafter Edgemont) and Globe Indemnity Company (hereinafter Globe), for breach of contract for the improvement of streets and installation of a water system in a subdivision located in the County of Kern and on the bond given for the faithful performance thereof. Both defendants join in an appeal from a judgment in favor of County in the sum of $12,938.70, plus prejudgment interest.

The relevant facts may be summarized as follows:

On March 4, 1958, Edgemont, a subdivider, entered into a contract with County whereby, as conditions precedent to approval and acceptance of the final subdivision map, Edgemont agreed to (1) construct certain streets and other public ways, and (2) construct and install a water supply system within the proposed subdivision. Contemporaneously therewith, Edgemont, as principal, and Globe, as surety, executed and posted a faithful performance bond.

Edgemont completed the street work and on October 19, 1959, prompted by a request from Edgemont, the nature of which is not shown by the record, representatives of the county surveyor's office and of the county road commissioner's office inspected the street improvement work. On October 20, 1959, the road commissioner's office, by letter addressed to the board of supervisors but delivered to the office of the county surveyor, stated that the street work had been completed and recommended that it be accepted. The county surveyor returned the letter to the road commissioner's office and, on October 28, 1959, wrote to Edgemont stating that the street work was found to be complete and satisfactory, that portions of the water system were installed, tested and approved, but since the contract included the installation of a water system, the County was unable to make acceptance until that system was completely installed and accepted. Edgemont then completed the water system.

On July 7, 1960, the county surveyor addressed a letter to the board of supervisors, stating that the completed water system had been inspected and found satisfactory on July 6, 1960; that the street work had deteriorated during the winter months so as to be unacceptable; that, since it was not the policy of the County to accept improvement work as separate items, it was recommended that none of the work be accepted but that the matter be referred to the road commissioner and to the county counsel for appropriate action. Copies of this letter were sent to both Edgemont and Globe.

The testimonial evidence shows that the deterioration was primarily the result of wind, rain and lack of maintenance. Some deterioration was caused by heavy equipment operated upon and over the streets and some resulted from the work of installing the water system. County was unable to allocate the damages to one cause or another.

Edgemont refused to do the repair work and the County had it done, letting part out on contract, and using its own equipment and employees to perform the remainder.

On May 23, 1961, the board of supervisors, upon recommendation of the road commissioner and the county surveyor, duly accepted the street improvements and the water system. This action was then commenced for breach of contract and on the bond, tried by the court, and judgment was rendered in favor of County and against both defendants.

On appeal, defendants present four issues: (1) The street improvement work was completed and should have been accepted as of October 20, 1959; (2) Edgemont was under no obligation or duty to maintain or repair the streets; (3) the bond of Globe was exonerated upon the performance of the street work; and (4) in any event, the amount of the judgment is erroneous.

Pursuant to the provisions of the Subdivision Map Act of the State of California (Bus. & Prof. Code, §§ 11500-11629),[1] the County of Kern adopted a subdivision control ordinance which provides, in part, for partial acceptance of improvement work performed by a subdivider as it progresses. Section 5801 of the ordinance requires four things for partial acceptance: a written application for partial acceptance made by the subdivider to the board of supervisors as to street improvement work, the written opinion of the road commissioner that the portion to be accepted is in and of itself a completed unit; as to all other improvement work, the written opinion of the county surveyor that the portion to be accepted is in and of itself a completed unit; and the certificate of the county surveyor that the portion to be accepted has been satisfactorily completed in accordance with the agreement.

There is no question in the case at hand of compliance with the ordinance. Indeed, defendants do not even suggest that there was substantial compliance by either a written or oral application for partial acceptance. The question relates to whether or not defendants' failure to file a written application for unit acceptance is excused by the law. Defendants rest their claim of legal excuse for noncompliance with the ordinance requirement upon the theory that the filing of an application for partial acceptance, in the face of the position taken by the county surveyor, would be a futile act, and the theory that the county surveyor had arbitrarily and wrongfully withheld his certificate. We cannot agree that complete

---

[1]We are concerned with the Subdivision Map Act as it existed prior to the 1961 and 1963 amendments.

failure to file an application for partial acceptance may be excused. As the trial judge pertinently remarked in his memorandum decision, "We are not here concerned with a case of arbitrary refusal to accept the street work alone. Had a proper request for partial acceptance been made and refused, an entirely different situation would be presented." Had Edgemont intended to seek partial acceptance of the performance due under the contract, under the aegis of section 11612 of the Business and Professions Code, it was under a duty to comply with the procedural requirements prescribed by the ordinance. (See also Bus. & Prof. Code, § 11551.) Had an application been made and rejected for want of the certificate of the county surveyor, Edgemont could have brought a special proceeding in the superior court to determine the reasonableness of the decision of the board (Bus. & Prof. Code, § 11525). The issues which defendants raise on this appeal would be more appropriately addressed to the superior court in such a special proceeding. Instead of pursuing any of the rights available to it under the Subdivision Map Act, Edgemont remained silent, made no protest, and completed installation of the water system. It would now have this court turn back the clock and make primary determinations relating to design and improvement of a subdivision which the Legislature has seen fit to vest in the discretion of the board. (Bus. & Prof. Code, §§ 11506, 11510, 11511, 11525, 11551, 11612.) This a court cannot do. The board has the first right to exercise its discretion in determining whether or not a portion of the work required by the contract is in and of itself a completed unit and to reject or accept streets, before there is court interference. Since Edgemont failed to file a written application for partial acceptance at the time it completed the street improvement work, failed to then request the county surveyor to issue his certificate and failed to even contact him or the board in this respect, we cannot now say, as a matter of law, that that portion of the work was in and of itself a completed unit and Edgemont had an absolute right to have the street work accepted at the time it completed that work.

■ Edgemont's contention that it had no contractual obligation to maintain or repair the streets after completion requires but brief comment. There is nothing in the statutes which imposes an obligation on the County to accept, improve, repair, maintain or exercise any control over the streets shown on the subdivision map until the County, in its

discretion, by action of its board of supervisors, should determine to accept such streets as a part of the county road system. (Sts. & Hy. Code, § 941.) ■■ The conditional acceptance of the subdivision map in no way constitutes said streets any part of the road system of Kern County. (*Hoover* v. *County of Kern,* 118 Cal.App.2d 139 [257 P.2d 492].)

■■ It is established that although the subdivision map undertakes to dedicate streets and roads, such does not make them public roads with a consequent obligation on the County to maintain them, as the dedication is a mere offer. (*Stump* v. *Cornell Construction Co.,* 29 Cal.2d 448, 451 [175 P.2d 510]; *McKinney* v. *Ruderman,* 203 Cal.App.2d 109 [21 Cal.Rptr. 263].)

As was stated in *Hoover* v. *County of Kern, supra,* at page 142:

"One of the main purposes of the Subdivision Map Act seems to be to require the subdivider to do the original work of placing the streets in a proper condition before the maintenance thereof is taken over by a city or county, and to relieve the public to this extent of the burden that would otherwise exist."

■■ It follows that the responsibility and liability for maintaining the streets in a proper condition remained with Edgemont until they were accepted by the board as county roads.

■■ Defendants' contention that their bond posted to secure the faithful performance of the street improvement work was exonerated upon completion of that work on October 20, 1959, is without merit. Their arguments in support of this contention are predicated upon the theory that Edgemont was absolutely entitled to have the street work accepted upon completion. Implicit in the agreement under which Edgemont undertook the street improvement work is the further promise that the work, when properly offered for acceptance, would be in conformity with the plans and specifications. Since Edgemont never made written application to the board for acceptance of the street work, the board was unable to exercise its discretion to accept or reject the streets as a unit. The County was not bound to even consider acceptance until Edgemont had fully performed its contractual obligations to construct streets and other public ways and to install a water system. At the time the water system was completed the streets were not in an acceptable condition. The faithful performance bond was operative until the responsibility of

Edgemont for the condition of the streets ended. That responsibility ended only when the County itself had the streets put into condition for acceptance. This being so, Globe's liability under the bond is coextensive with the liability of Edgemont, its principal.

In *County of Los Angeles* v. *Margulis*, 6 Cal.App.2d 57 [44 P.2d 608], the county sued to recover on a similar bond posted by a subdivider to secure faithful performance of an agreement to improve streets and construct a storm drain. In affirming judgment for the county, the appellate court said:

"The contract provided for the improvement of certain streets, avenues and alleys and the installation of a storm drain. ... Under the contract the county was entitled to have these highways so improved, and this right was of a value equal to the cost of the work. The contract having been breached by a failure to perform, the county was entitled to a sum equal to the cost of the uncompleted portion of the work; ... Under the contract the county was entitled to receive work of a certain value. This work not having been received, the county was entitled to receive in lieu thereof as damages a sum of money equal in value to the uncompleted work which the contract called for, and appellant as surety was liable under its bond up to the penal sum therein specified." (Pp. 59-60.)

We have read but do not deem it necessary to here review and distinguish all cases upon which defendants rely. Suffice it to say such cases deal with entirely different factual situations and are not controlling. Isolated sentences plucked therefrom which seem to support some of defendants' arguments lose their force when applied to the facts of this case.

By what obviously was inadvertent error, the judgment awards the sum of $12,938.70 as damages. Clear proof at trial established damages of $12,577.58, and both parties agree that the latter amount is correct. Accordingly, the judgment is modified and the trial court is instructed to reframe the findings of fact and conclusions of law and the judgment by striking therefrom the figure $12,938.70 and inserting in lieu thereof the figure $12,577.58.

As so modified, the judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied December 30, 1963, and appellants' petition for a hearing by the Supreme Court was denied January 29, 1964.