[Civ. No. 25501. First Dist., Div. Four. July 30, 1970.]

EDITH M. ACKLEY, Plaintiff and Respondent, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Appellants.

COUNSEL

Thomas M. O'Connor, City Attorney, George P. Agnost, Deputy City Attorney, Russ & Benson and John E. Benson for Defendants and Appellants.

Saveri & Saveri and Richard Saveri for Plaintiff and Respondent.

OPINION

RATTIGAN, J. — Defendants, the City and County of San Francisco ("City") and St. Francis Homes Association ("Association") appeal from a judgment awarding plaintiff Edith M. Ackley $54,928.72 for personal injuries. The City also appeals from orders denying judgment notwithstanding the verdict and a new trial; the latter is nonappealable (*Rodriguez* v. *Barnett* (1959) 52 Cal.2d 154, 156 [338 P.2d 907]), and the purported appeal therefrom is dismissed.

According to evidence presented at trial, plaintiff, a resident of the St. Francis Woods residential development in San Francisco, injured her hip in 1961 when she caught her heel in a hole at the top of an outdoor staircase and fell down the steps. The staircase was located along a path known as Terrace Walk, which connected two city streets, Yerba Buena Avenue and Terrace Drive, in the St. Francis Woods area.

St. Francis Woods was developed by the Westgate Park Corporation, predecessor in interest to defendant Association. In 1918, Westgate filed for recordation a subdivision map which dedicated for public use several streets in the development, including Terrace Drive and Terrace Walk. By resolution, the board of supervisors approved the map for recordation "in accordance with the provisions of the Charter of the City and County of San Francisco and in compliance with the provisions of an Act requiring the recording of maps of subdivisions of lands into lots for the purpose of sale and prescribing the conditions on which such maps may be recorded and prohibiting the selling or offering for sale of land by reference to said maps unless the same are recorded. . . ." After approval by the board of public works, the board of supervisors "accepted" for street purposes "the area known as *Terrace Drive*." (Italics added.) No mention was made of any acceptance of Terrace Walk. The City's records did not list Terrace Walk as being an accepted street for which the City assumed responsibility for maintenance and repair. On the other hand, records and maps in the assessor's office did not show Terrace Walk to be private property for assessment purposes.

It was uncontroverted that Terrace Walk was maintained by the Association, of which plaintiff and her husband were members. Throughout the years, the Association did "continual overall maintenance and repair," including replacement of steps on occasion. The Association employed a maintenance crew which inspected the stairway every week. When work needed to be done, the Association's secretary, John Craig, made a recommendation to the Association's parks and parkway committee, which in turn forwarded a recommendation for expenditure of funds to the Association's board of directors.

In September or early October 1961, just prior to the accident, one of the residents notified Craig that he thought "some work should be done on that lower tier of stairs (from which plaintiff fell)." Craig and the chairman of the parks and parkway committee investigated, and found the stairs to be "in a dangerous condition." (Subsequent to the accident, the parks and parkway committee recommended to the board of directors that "repair work be done at once.")

Craig testified that it was his practice to notify the City's department of public works if he found needed repairs on city property. He never requested the City to make repairs on Terrace Walk; to the best of his knowledge, City employees had never inspected or done maintenance work on the walk. The Association did not bar Terrace Walk from the public, and members of the public who were not homeowners of St. Francis Wood used the walk.

Under Government Code section 835,[1] a public entity is liable for foreseeable injury caused "by a dangerous condition of its property" if the condition was caused by a negligent act or omission of an employee or if the public entity had actual or constructive notice of the condition in sufficient time to have taken appropriate precautions. "Property of a public entity" or "public property" includes property "owned or controlled" by a public entity. (Gov. Code, § 830, subd. (c).) The City contends that Terrace Walk was not public property and that judgment notwithstanding the verdict should therefore have been entered; it is also contended that the court erred in instructing the jury that Terrace Walk was public property as a matter of law. Plaintiff and the Association argue, on the other hand, that the City was the owner of Terrace Walk by dedication.

■  Dedication of private property for public use requires an offer of dedication by the owner and an acceptance of the offer by the public entity. (*Union Transp. Co.* v. *Sacramento County* (1954) 42 Cal.2d 235, 240 [267 P.2d 10]; *County of Tuolumne* v. *Crook* (1960) 177 Cal.App.2d 490, 494 [2 Cal.Rptr. 197]; *Flavio* v. *McKenzie* (1960) 177 Cal.App.2d 274, 277 [2 Cal.Rptr. 79].)  ■  The offer to dedicate Terrace Walk was expressly made on the subdivision map; however, the streets and thoroughfares accepted by the City, as noted on the subdivision map, did not include Terrace Walk (although it did include Terrace Drive). The supervisors' approval of the subdivision map for recordation did not constitute acceptance of any streets offered thereon for dedication. (*County of Kern* v. *Edgemont Dev. Corp.* (1963) 222 Cal.App.2d 874, 879 [35 Cal.Rptr. 629].) At the time the subdivision map was filed, approval of the map by the city or county was necessary before the map could be recorded and lots sold. (Subdivision Map Act of 1907 [Gen. Stats., ch. 231, p. 290], forerunner to the present Subdivision Map Act [Bus. & Prof. Code, §§ 11500-11640].) The resolution of the San Francisco Board of Supervisors approving the map expressly noted that the action was for the purpose of complying with the Subdivision Map Act. The record is devoid of any

[1]The Tort Claims Act (Gov. Code, § 810 et seq.) was passed in 1963, at which time the former Public Liability Act (Gov. Code, § 53050 et seq.) was repealed. (Stats. 1963, ch. 1681, p. 3286, § 18.) Although Government Code section 53051 (the forerunner to § 835) was relied on at trial, there is no substantial difference between the two sections. (*Teall* v. *City of Cudahy* (1963) 60 Cal.2d 431, 432 [34 Cal.Rptr. 869, 386 P.2d 493].) Section 53050 (forerunner to § 830) did not expressly define public property to include property "controlled" by a public entity, but the courts had imposed liability where a public agency controlled property even though it did not own the property. (See *Bacigalupi* v. *Bagshaw* (1948) 87 Cal.App.2d 48 [196 P.2d 66].) In any event, although the present statutes were not in effect at the time of plaintiff's accident, they apply retroactively. (*City of Burbank* v. *Superior Court* (1965) 231 Cal.App.2d 675, 681-682, 684 [42 Cal.Rptr. 23]; Stats. 1963, ch. 1681, p. 3288, § 45.)

other evidence of formal acceptance of Terrace Walk by the City.[2] The assessor's maps and records, containing no indication that the property was privately owned, do not constitute evidence that the dedication was accepted. "[T]he mere omission of municipal authorities to assess land dedicated for a street for a public improvement is not evidence of such an acceptance as will make the property a public street." (11 McQuillin, Municipal Corporations (3d ed. rev.) § 33.53, p. 773; see also 15 Cal.Jur.2d, Dedication, § 49, p. 350; *Schmitt* v. *San Francisco* (1893) 100 Cal. 302, 308 [34 P. 961].)

■ However, acceptance need not be by formal action but may be implied from official acts of dominion or control over the property, such as maintenance and repair work. (*Union Transp. Co.* v. *Sacramento County, supra,* 42 Cal.2d 235, at p. 244; *Tischauser* v. *City of Newport Beach* (1964) 225 Cal.App.2d 138, 145 [37 Cal.Rptr. 141].[3]) This same "control" that would constitute acceptance of a dedication would also bring the property within the definition of "public property" under Government Code section 830.

■ In the *Union Transportation* case, an implied acceptance of the dedication was found where the county's superintendent of roads dispatched equipment to repair a road, although the record showed that no repairs were actually made; it was held that, by the superintendent's action, the county "assumed control" of the road. (*Union Transp. Co.* v. *Sacramento County, supra,* 42 Cal.2d 234, at p. 244.) In the present case, there is *no* evidence

[2]Plaintiff's argument that Terrace Walk was accepted as a "public ground" under the Charter of the City and County of San Francisco is unavailing. (Charter of the City and County of San Francisco, art. VI, ch. 2, § 28.) The subdivision map contains the notation that "This map . . . showing location and dedication of Terrace Drive, San Lorenzo Way, Terrace Walk and Portal Path, is approved by the Board of Public Works of the City and County of San Francisco, by Resolution No. 60256 . . ." Resolution No. 60256, in addition to approving the acceptance of the deed to Terrace *Drive,* approved the map "for ratification by said Board [of Supervisors] and . . . recording with the City and County Recorder." As we have noted, mere approval of a map for recordation does not constitute an acceptance of an offer of dedication contained therein. Consequently, even if Terrace Walk was a "public ground" and the board of public works was authorized to accept "public grounds" on behalf of the City, there was no such acceptance.

[3]While *Tischauser* indicates that acceptance may also be implied by public use over a period of time, other cases have held that such use may imply an offer to dedicate but may not, in itself, constitute an acceptance for the purpose of imposing liability on a public entity. (*Union Transp. Co.* v. *Sacramento County, supra,* 42 Cal.2d 235, at p. 244; *McKinney* v. *Ruderman* (1962) 203 Cal.App.2d 109, 115-116, fn. 2 [21 Cal.Rptr. 263].) The rationale behind this rule is that "to permit a small segment of the public by use of a private way to impose the burden of maintaining it upon the general public would be in dereliction of the powers of the elected officials, and permit the establishment of public roads in undesirable places." (*Union Transp. Co.* v. *Sacramento County, supra.*)

of any exercise of dominion or control by the City. The City had never made any repairs to Terrace Walk, had never inspected it, nor had it acted in any other way so as to imply an acceptance.

Plaintiff contends that the City "controlled" Terrace Walk because of a city ordinance which authorizes the department of public works to notify private property owners of any dangerous and defective conditions and to order the owner to make the necessary repairs. (San Francisco Municipal Code, pt. II, ch. X, art. 9, § 400.) It is argued that this ordinance imposed a duty on the City to insure that Terrace Walk was properly maintained. In support of this argument, plaintiff cites *Holmes* v. *City of Oakland* (1968) 260 Cal.App.2d 378 [67 Cal.Rptr. 197]. *Holmes* is clearly distinguishable and involved the interpretation of Government Code section 830, subdivision (c), which excludes from the definition of public property "easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity." In *Holmes,* the city had granted a franchise to operate a railroad across various public streets, but had reserved the right to regulate construction on the streets and make inspections. The court held that having reserved such rights, the city was under a duty to inspect and could not claim that it did not "control" the property in question.

Unlike the ordinance in *Holmes,* which dealt with specific property, the San Francisco ordinance is general in nature. The ordinance does not grant the department of public works the right to make inspections on private property. To infer assumption of control over, or even a duty to inspect, Terrace Walk from the provisions of the ordinance would result in making the City and County of San Francisco liable for any dangerous conditions on any private property located within its borders.

We conclude that, as a matter of law, Terrace Walk was not public property within the meaning of Government Code section 830 (or its predecessor, Gov. Code, § 53050), and that, therefore, the City could not be held liable for plaintiff's injury under Government Code section 835 (or its predecessor, Gov. Code, § 53051.) Because the judgment against the City must be reversed and judgment notwithstanding the verdict granted, we need not reach the other issues raised by the City on appeal.

■ The Association in its appeal contends that the trial court erroneously instructed the jury on the duty it (the Association) owed to plaintiff with respect to Terrace Walk. The jury was instructed that the Association had a duty to maintain the premises in a safe condition, exercise due care in inspecting and discovering defects, and give reasonable warning of dangerous conditions to persons using the premises. The Association argues

that these duties apply only to an owner or occupier (*Nigro* v. *West Foods of Cal.* (1963) 218 Cal.App.2d 567, 573-574 [32 Cal.Rptr. 692]), which it was not. As we have concluded that the City did not accept the dedication of Terrace Walk, ownership and the duties of ownership remained with the Association as successor to the Westgate Park Corporation. (*County of Kern* v. *Edgemont Dev. Corp., supra,* 222 Cal.App.2d 874, at p. 879.) Hence, the court did not err in giving the challenged instructions.

Insofar as it is against the City and County of San Francisco, the judgment is reversed. The order denying the City and County's motion for judgment notwithstanding the verdict is reversed. The trial court is directed to enter judgment in favor of the City and County. The latter's purported appeal from the order denying its motion for new trial is dismissed. Insofar as it is against St. Francis Homes Association, the judgment is affirmed. Respondent will bear the City and County's costs on appeal; St. Francis Homes Association will bear respondent's and its own costs.

Devine. P. J.. and Christian. J. concurred.