Mark STAMAS and Judy
Castles, Plaintiffs,

v.

COUNTY OF MADERA, Board of Supervisors of the County of Madera, Gerald Houston, Linda Barlow, Defendants.

Case No. CV F 09–0753 LJO SMS.

United States District Court,
E.D. California.

June 14, 2011.

Michael Richard Johnson, Robert M. Dowd, Laura Anne Wolfe, Raymond L. Carlson, Griswold Lasalle Cobb Dowd and Gin, Hanford, CA, for Plaintiffs.

Andrew W. Sorensen, Ryan D. Libke, Emerson, Corey, Sorensen, Church & Libke, Gordon M. Park, Scott M. Reddie, McCormick Barstow Sheppard Wayte and Carruth LLP, Fresno, CA, for Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION (Doc. 125, 133, 134)

LAWRENCE J. O'NEILL, District Judge.

Three motions for summary judgment, or in the alternative, summary adjudication pursuant to Rule 56 are pending before this Court: (1) Defendants Linda Barlow's and Gerald Houston's motion against plaintiffs Mark Stamas and Judy Castles, (2) Defendant County of Madera's and the Board of Supervisors' motion against plaintiffs Mark Stamas and Judy Castles, and (3) Plaintiff Mark Stamas' and Judy Castles' motion to adjudicate material facts and conclusions of law.

Each party filed an opposition on May 18, 2011. The replies were filed on May 25, 2011. Pursuant to Local Rule 230(g), this matter was submitted on the pleadings without oral argument, and the hearing set for June 1, 2011 was VACATED. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.[1]

---

1. The parties have filed numerous objections to the evidence submitted by the opposing side. The Court has not relied on any of the disputed evidence to grant or to deny summary judgment. Where the Court has denied summary judgment as to the claims, the Court found triable issues exist regarding the issues. To the extent that the Court may have considered some of the disputed evidence in finding that triable issues exist regarding the claims, the objections are OVERRULED. Further,

## FACTUAL BACKGROUND

### A. Factual Overview

This action involves conflicting claims to an easement or private right-of-way, which was created, modified, or revised over a 120–year time span and ownership of which is in dispute. Plaintiffs claim a right to an easement on Cascadel Road. Plaintiffs contend they are entitled to access to a 60–foot wide street, and not a 12–foot road, which plaintiffs complain County of Madera and the Board of Supervisors ("Madera") and adjacent property owners, Defendants Gerald Houston and Linda Barlow ("Houston/Barlow") now limit plaintiffs. The Third Amended Complaint ("TAC") alleges the following causes of action:

1. First Cause of Action for Violation of 42 U.S.C. § 1983–Substantive and Procedural Due Process;

2. Second Cause of Action for Violation of 42 U.S.C. § 1983—Equal Protection;

3. Third Cause of Action for Malicious Prosecution;

4. Fourth Cause of Action for Slander of Title;

5. Fifth Cause of Action for Breach of Contract;

6. Sixth Cause of Action for Declaratory relief; and

7. Seventh Cause of Action for Quiet Title.

### B. Summary of Pertinent Allegations

The Cascadel Woods Subdivision is located in a mountainous portion of Madera. The subdivision map for Cascadel Woods, Subdivision No. 4, was recorded in Madera County in 1963. Plaintiffs are the owners of Lot 38 of Subdivision No. 4 in the Cascadel Woods Subdivision. Plaintiffs' property abuts Cascadel Road which is the main ingress and egress to the Subdivision. Stamas and Castles have lived there since 1981. Houston and Barlow purchased Lot 1, which is a 10.42 acre parcel, in Cascadel Woods in 2004.

#### 1. Brief History of Cascadel Road

The beginning of Cascadel Road dates back to an 1888 Deed to the County of Fresno.[2] This Deed granted to "the County of Fresno, in said state the Right of Way for a Public Road, and all incidents thereto," as defined by a specific road survey performed in 1888. (Doc. 131–1, Joint Exh. 1.) The Right of Way was defined as a "strip of land sixty feet wide" the location of which was defined by the road survey. The road survey is lost in antiquity, and the precise location of the Right of Way for a Public Road referred to in the 1888 Deed, cannot be determined.[3] Ma-

---

the Court is not obligated to consider matters not specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The motion and opposition must designate and reference specific triable facts. *Carmen v. San Francisco Unified School Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001).

**2.** Madera County was formed from a portion of Fresno County in 1893 according to the uncontradicted statements of the parties. The date of formation is not relevant. The parties agree that after the date if Madera's formation, Madera succeeded to whatever interests in Cascadel Road the Fresno County held.

**3.** The parties dispute whether the 1888 Deed conveyed not only the Right of Way but also the underlying fee. Plaintiffs contend the 1888 Deed conveyed both the underlying fee to the land and the Right of Way over the land. Madera contends that the 1888 Deed conveyed only a "right of way" since the language "right of way" is used in the 1888 Deed. *City of Los Angeles v. Pacific Elec. Ry. Co.,* 168 Cal.App.2d 224, 232, 233, 335 P.2d 1042 (1959) (a deed conveying a strip of land 50 feet wide for road purposes raises the inference that the grantor owns the land on each side of the 50–foot strip, and creates an easement in the dedicated property rather than a fee-simple interest). *Id.* (The intention to offer private property for dedication can be

dera acknowledges that the 1888 Deed was an accepted dedication of the right of way. (Doc. 133–1, Madera P & A p. 21.)

No history for the road is presented until 1956. In 1956, Madera quitclaimed the Right of Way described in the 1888 Deed to Cascadel Ranch Properties, Inc., the developer of the Cascadel Subdivision. Thus, any interest in the 1888 Right of Way was quit claimed to Cascadel Ranch Properties. (Doc. 131–1, Exh. 5, Quitclaim Deed.) The Cascadel Woods Subdivision, Subdivision no. 4, was recorded in Madera County in 1963. (Doc. 131, Joint facts no. 1) The subdivision map no. 4 shows Cascadel Road terminated at the easterly boundary of the Houston/Barlow property and is shown as a private, not public road.[4] (Doc. 131–1, Joint Exh. 29, Jones Decl. ¶ 2.) Page 2 of the subdivision map shows a 60 foot wide right of way ending at the border of Lot 1 and not crossing Lot 1. (Doc. 131–1, Joint Exh. 8.) The map does not depict any road or right of way crossing any portion of Lot no. 1, the present day Houston/Barlow property. (Doc. 131, Joint facts no. 2.) There is no notation on the subdivision map of an abandonment of any public road that may have existed and crossed Lot 1 before the filing of the Subdivision Map.[5]

Since the time Stamas and Castles moved into their residence in 1981, the width of Cascadel Road between Lot 38 and the entrance to Cascadel Woods has remained substantially the same. It is

undisputed that a 60–foot wide, physical road does not cross Lot 1, the Houston/Barlow property, and a 60–foot road has never existed. Instead, a 10–12 foot wide dirt Cascadel Road physically crosses a portion of the Houston/Barstow property. It is undisputed that Cascadel Road as it crossed Lot 1 has always been 10 to 12 feet wide. It is undisputed that this portion of Cascadel Road was not incorporated into the Madera County Highway system.

### 2. Subsequent conveyances and deeds involving Cascadel Road

After the recordation of the subdivision map in 1963, a series of deeds, quit claims, unrecorded conveyances and late recorded conveyances compound the ownership, rights and the very existence of the 60–foot wide easement across Lot 1.

In 1964, Cascadel Ranch Properties deeded Lot 1 to Three Power Foundation ("3Ps"), which presumably conveyed the entirety of the Lot 1 property, the underlying fee property and the right of way, without any reservation of the right of way across Lot 1. (Doc. 131.–1, Joint Exh. 12, Grant Deed to 3Ps.) On September 5, 1967, 3Ps grant deeded Lot 1 back to Cascadel Ranch Properties, and there is no reservation for the right of way, and presumably conveyed the entirety of the Lot 1 property, the underlying fee property and the right of way. This grant deed was recorded on September 8, 1967. Then on Sep-

---

4. The Court notes that the parties have produced copies of the subdivision map and related documents, which in large measure are illegible. The copies are reduced in size. The copies have been highlighted and then reproduced which makes the wording unintelligible. The courtesy copies provided fare no better.

evidenced by a grant deed of the property to a public or governmental agency, either by an absolute conveyance of the fee title). This contention is addressed *infra*.

5. A final subdivision map must adequately delineate all public streets and easements that will remain in effect after the map is recorded. All public streets and easements not shown on the recorded final map are abandoned, provided that there is a written notation certified by the legislative body approving the map that identifies each abandoned street or easement. Gov.Code, §§ 66434, subd. (g), 66445, subd. (j).

tember 11, 1967, Cascadel Ranch Properties quitclaimed a sixty foot right of way, as described in the 1888 Deed, to County of Fresno.[6] (Doc. 131–1, Joint Exh. 14.) This deed is recorded on September 18, 1967. On September 12, 1967, Cascadel Ranch Properties deeded Lot 1 to 3Ps, and this grant does not mention the 60 foot right of way. The right of way had been conveyed to Fresno County on September 11, and the Cascadel Ranch Properties conveyance to 3Ps conveyed the underlying fee property, but there is no mention or reservation of the right of way in the deed.[7] (Doc. 131–1, Joint Exh. 15.) Then, on November 7, 1967, Madera quitclaimed back to Cascadel Ranch Property the 60-foot right of way (assuming Madera got the right of way in the September 1967 deed) and the deed was recorded on November 20, 1967. (Doc. 131–1, Joint Exh. 16.) By this quit claim, it appears that Madera released any of its interest in the 60 foot right of way back to Cascadel Ranch Property.

On December 22, 1967, Cascadel Ranch Property offered to dedicate the "street right of way" of a 60 foot right of way.

(Doc. 131–1, Joint Exh. 17.) This offer of dedication was made in relation to "a deed dated September 18, 1955," which deed has not been provided to the Court.[8] From the documents provided, it appears that Cascadel Ranch Property was not the owner of Lot 1 at the time of the offer of dedication because Lot 1 had been conveyed to 3Ps on September 12, 1967. But it appears that Cascadel Ranch Property was the "owner" of the right of way, because Madera had quitclaimed the right of way to Cascadel Ranch Properties on November 7, 1967 (assuming Madera got the right of way in the September 1967 deed.) The December 22 offer of dedication by Cascadel Ranch Properties to Madera was not recorded until 1969 ("1969 Offer of Dedication"), and it is undisputed that the 1969 Offer of Dedication has never been accepted by Madera.

On April 29, 1968, 3Ps deeded Lot 1 to New Life Foundation. (Doc. 131–1, Joint Exh. No 18.) Whatever interest 3Ps held was transferred to New Life Foundation, and there is no mention of the right of way in the deed. The parties agree that 3Ps owned the underlying fee to the road and

---

6. The parties do not explain how this quit claim to the County of Fresno, a separate governmental entity, impacts the road. The parties assume this quit claim to Fresno County is interchangeable with a quitclaim to Madera County; as if the quit claim transferred rights to Madera County. Fresno County is distinct legal entity from Madera County and the parties do not introduce a quit claim from Fresno County to Madera. (See Doc. 133–2, Defendant's fact no. 55–58.) Indeed, a prior interest in the road held by Fresno County in September 1956 was quit claimed to Madera. (Doc. 131–1, Joint Exh. No. 4.)

7. There is no evidence as to whether 3Ps had notice that Cascadel Ranch Properties had deeded a sixty foot right of way to Fresno County a day prior. California is a race-notice jurisdiction and requires every conveyance of real property to be recorded in order

to be valid against a subsequent purchaser of the same property. See In re Weisman, 5 F.3d 417 (9th Cir.1993); Cal.Civil Code § 994 (an instrument is enforceable between the parties even though it is not recorded) and § 1214. However, an unrecorded instrument is valid as between the parties thereto and those who have notice of it. Cal.Civil Code § 1217. A person receiving a deed to, or a deed of trust on, property acquires his or her title or lien subject to all previous transfers of title and previously created liens and encumbrances of which he or she has actual or constructive knowledge. Civ.Code, § 1217 (concerning actual knowledge of an unrecorded instrument), Civ.Code, § 1213 (constructive knowledge of recorded instruments).

8. The offer of dedication was made relative to the applications for Parcel Maps 43 and 44, and the relation to Lot 1 is not fully explained to the Court.

therefore that is what was transferred to New Life Foundation. On June 13, 1968, both deeds (the deed of September 12, 1967 granting Lot 1 from Cascadel Ranch Property to 3Ps, and the deed of April 29, 1968 granting Lot 1 from 3Ps to New Life Foundation) were recorded.

In 1972, the Houston/Barlow predecessor in property, Ralph and Helen Walton, acquired Lot 1 from New Life Foundation. (Doc. 131–1, Exh. 19.) Lot 1 had an exception for the 60 foot wide roadway. The 1972 Deed granted Lot 1 to the Ralph and Helen Walton, and excepted a 60 foot right of way from the land transfer:

> For valuable consideration ... Cascadel New Life Foundation, a corporation hereby grants to RALPH WALTON and HELEN WALTON, husband and wife the real property in the County of Madera, State of California, described as Lot No. 1 of Tract No. 119, Cascadel Woods Subdivision No. 4, ... EXCEPTING THEREFROM any portion thereof which may lie within the bounds of the 60 foot road right of way offered to the County of Madera for dedication to public use by Cascadel Ranch Properties, Inc. recorded on July 11, 1969 [the 1969 Offer of Dedication] ...

The 60 foot Right–Of–Way exception runs with every subsequent deed in the chain of title to Lot 1, including the deed to the Houston/Barlow. (Doc. 131–1, Joint Exh. 19, 26.)

### 3. Prior Quiet Title Action which resulted in the Houston Offer of Dedication

The parties to this litigation were involved in a prior quiet title action as to the use of Cascadel Road and the ownership of the underlying property. That litigation did not reach judgment. Houston/Barlow claimed ownership to the underlying fee property of Cascadel Road as the road passes over their property. Houston/Barlow filed a civil action in Madera County Superior Court against Madera County and Mark Stamas and Judy Castles, among others. Houston/Barlow and Madera settled the dispute ("Settlement Agreement") in which Houston/Barlow agreed to abandon their claims against the County in exchange for the County's promise to execute a Quitclaim deed releasing any of its interest in the 60 foot wide road and the underlying road property ("2007 Quitclaim"). Plaintiffs allege that the Settlement Agreement extinguishes Plaintiffs' and the public's rights in the 60 foot right of way. As part of the Settlement Agreement, Houston/Barlow offered for dedication an area consisting of 12 foot wide portion of Cascadel Road as it passes through the Houston/Barlow property ("Houston Offer of Dedication"). Plaintiffs allege the 2007 Quitclaim gave to Houston/Barlow the rights to gate the road and for road work to be exclusively performed by the Houstons. Plaintiffs allege that this 12 foot wide portion eliminates most of their 60 foot easement.

### 4. Criminal Action against Stamas

On or about October 1 and 2, 2007, Stamas was having work done on the portion of Cascadel Road that crosses Lot No. 1, including grading work, on behalf of Cascadel Woods Homeowners Association. No permits were applied for or obtained to do any of the work. Stamas believed no permits were needed for the work. Houston and Barlow did not believe that such work could be done on the portion of Cascadel Road that crosses Lot No. 1 without proper permits being pulled. It is disputed whether Houston requested Stamas and the workers to cease working on Cascadel Road; however, the work continued.

Houston called his attorney who called David Prentice, the Madera County Counsel. Ultimately, Deputy County Counsel Dave Herman contacted Houston. During

Herman's telephone conversation with Houston, Houston stated that Stamas had been out on Cascadel Road with construction equipment, and that photos were taken. On October 4, 2007, at 10:23 a.m., after Houston's telephone conversation with Herman,[9] Houston sent an e-mail to Herman attaching 38 photos, and stating the following:

My attorney Greg Chappel has advised me to send you a selection of photos my wife and I took during and after the intrusion by Mark Stamas on our section of Cascadel Road. I have attached 38 photos that have been reduced from their original size. I can send you the original photos on CD if you wish. I have also attached a PDF file (description.pdf) which described what the photos show and when they were taken. Please feel free to contact me or my wife, Linda Barlow, by phone or e-mail. If I am attempting more attachments than your email system can handle, I can divide the photos up into several emails. Thanks for your attention to this matter.

According to Houston/Barlow, Herman began researching and investigating whether Stamas may have violated any Madera County Code Enforcement statutes or ordinances. Herman researched the issue and determined that Title 10 of the Madera County Code forbade various activities on public and county roads without a permit, and that such activities could be criminally prosecuted. Herman also reviewed the photographs and discussed with County Counsel Prentice whether to proceed criminally or civilly and whether it would be appropriate to pursue criminal charges against Stamas for possible code enforcement violations. (Doc. 128–1 (Reddie Decl.), Exh. 2 Herman Depo. p. 20–22, 25.) Stamas disputes the extent of this investigation because, among other reasons, Stamas was not contacted and the Road department was not contacted. (Doc. 150, Plaintiff's disputed fact no. 34.) Herman determined that Stamas could be criminally charged with violations of the Madera County Code. There is no evidence that, aside from the email from Houston and the Houston/Herman conversation, Houston had any further input into the filing of criminal charges. Herman, as a Special Deputy District Attorney, filed a criminal complaint against Stamas for five misdemeanor counts.[10] Before being filed, Herman sent the complaint to the supervising Madera County Deputy District Attorney, Karen Mitchell, for her approval. She reviewed and approved the complaint. (Doc. 128–1 (Reddie Decl.), Exh. 2 Herman Depo. p. 28–29.) Herman filed the complaint on October 5, 2007.

At the trial on May 2, 2008, Stamas entered into a "Civil Settlement Agreement," which resulted in the criminal charges being dismissed. (Doc. 131–1, Joint Exh. 38.) Specifically, the transcript of that hearing provides, in relevant part:

MR. HERMAN: We have a settlement, your Honor. It's a civil settlement in good faith, your Honor, but in return for Mr. Stamas agreeing to certain conditions the people are willing to dismiss all charges.

THE COURT: So somebody will state those for us or just kind of among friends.

MR. HERMAN: This is actually not a confidential settlement, your Honor, so

---

**9.** Stamas disputes whether the Herman/Houston conversation occurred before or after the criminal complaint was filed, but does not dispute that Houston sent the email on the date the email indicates.

**10.** Each Count involved violations of Madera County Code § 10.24.020 for Obstructions and Damage to County highways.

we are willing to put the settlement on the record. The agreement actually will be stated by Mr. Fiegel [Mr. Stamas' attorney].

MR. FIEGEL: Mr. Stamas will agree not to do any maintenance personally as an individual on the subject section of property. . . .

. . . .

THE COURT: All right. Mr. Stamas, did you understand what both your attorney and the other two attorneys said?

MR. STAMAS: I do.

THE COURT: Is that your agreement?

MR. STAMAS: Yes, I personally agree to no longer to ever maintain—let me just say yes.

THE COURT: Sometimes, you know, a simple question deserves a simple answer. All right. Then, regardless of whether you are going to put this in writing, we do appear to have an agreement. That will be reflected, at least, briefly in a Court minute order. 1, a civil settlement agreement. 2, the agreement to dismiss the charges pending. So this matter is dismissed. Thank you all.

Stamas admitted that, as part of the agreement to have the criminal charges dismissed, he agreed that he would not do any maintenance on the portion of Cascadel Road that crosses Lot No. 1. Stamas further admitted that, absent that agreement, he believes he has the legal right to perform maintenance on Cascadel Road.

## C. The Parties' Requests for Adjudication

The current motion by Houston/Barlow challenges the causes of action for Malicious Prosecution and for Slander of Title.

The motion by Madera challenges the Due Process and Equal Protection constitutional causes of action and the breach of contract cause of action. In addition to these causes of action, Madera seeks adjudication of the following facts:

1. The 1888 Deed to the County of Fresno granted only an easement for a right of way, and not a fee;

2. That the 1967 Offer of Dedication was not valid relative to Lot 1;

3. That the County's 2007 quitclaim passed no interest;

4. That the County has not abandoned any public right of way at issue;

5. That the unaccepted Houston Offer does not alter or affect any other public or private rights.

Plaintiffs's motion seek adjudication of the following material facts:

1. Cascadel Road and its Right-of-Way is a long-standing public road in use as intended, is the Deeded 1888 Wagner Right-of-Way, and splits Lot 1;

2. The Houston "Offer-of-Dedication" ("Houston Offer") is illegal and therefore void;

3. *People v. Stamas* Case No. SCR007619 was procured and controlled by Houstons through the illegal Houston Offer;

4. Madera County is in Breach of Contract with Stamas.

## D. Plaintiffs' Request for Judicial Notice

Plaintiffs have asked this Court to take judicial notice of numerous documents. (See Doc. 136–139 (Exh. A–P).) The documents include various person's declarations filed in the prior Quiet Title action, *Houston v. Madera*, Case no. SCV 005012.

 "Judicial notice" is the court's recognition of the existence of a fact without the necessity of formal proof. *See United States v. Harrison*, 651 F.2d 353, 355 (5th Cir.1981); *Castillo–Villagra v. I.N.S.*, 972 F.2d 1017, 1026 (9th Cir.1992). Facts proper for judicial notice are those

facts not subject to reasonable dispute and either "generally known" in the community, or "capable of accurate and ready determination" by reference to sources whose accuracy cannot be reasonably questioned. Fed.R.Evid. 201; *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986) (court may take judicial notice of official records and reports. The court need not accept as true allegations that contradict facts which may be judicially noticed by the court.) A court may take judicial notice of its own records. *See e.g., Day v. Moscow*, 955 F.2d 807, 811 (2nd Cir.1992). Courts may take judicial notice of public records. *Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. State of Calif.*, 536 F.3d 1034, 1039–1040 & fn. 4 (9th Cir.2008). Judicial notice is particularly appropriate for the court's own records in prior litigation related to the case before it. *Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361–1362 (10th Cir.2008) (district court was entitled to take judicial notice of its memorandum of order and judgment from previous case involving same parties).

The Court cannot take judicial notice of the declarations filed in *Houston v. Madera*, Case no. SCV 005012. These declarations are not judicially noticeable because they are not facts "generally known" in the community and are not "capable of accurate and ready determination." The Court may take judicial notice that declarations were filed in that action, but the Court may not take judicial notice of the underlying factual support. Therefore, the Court will not take judicial notice of the factual support in the documents.

The remaining documents include a topographical map and a portion of the Madera County Ordinance, Chapter 17.76. The Court may take judicial notice of the ordinance. The Court declines to take judicial notice of the map. There is no authentication, or indication of portion of the map that may be relevant to this proceeding.

### E. Expert Rob Rasmussen

Stamas offers the declaration of Rob Rasmussen as an expert. Mr. Rasmussen is a licensed land surveyor. In his declaration dated April 15, 2008, he states that "[m]y job was to locate and depict the location of Cascadel Road as it exists today." (Doc. 135–6, Rasmussen Decl. ¶ 8.) He states that he completed his work sometime in June 2008.

Houston/Barlow and Madera object to the declaration on the grounds that Mr. Rasmussen, as a retained expert, has been stricken by the Court. (Doc. 124, Order p. 7.) Plaintiffs had represented that Mr. Rasmussen was designated as a non-retained expert who was involved in the controversy. Mr. Rasmussen's deposition states he was retained as an expert for which he was being paid and prepared a road map for purposes of litigation.

The Court will not consider whether to exclude the declaration or testimony of Mr. Rasmussen at this time. For reasons stated *infra*, the Court finds the declaration marginally relevant. His declaration does not delineate the "ownership" or "public" interests in Cascadel Road, which comprise the issues involved in these motions. His declaration addresses the alignment of Cascadel Road which is an issue of fact and an issue for the quiet title cause of action.

### ANALYSIS AND DISCUSSION SUMMARY JUDGMENT/ADJUDICATION STANDARDS

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the

moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56(c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985). On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

## MOTION FOR SUMMARY JUDGMENT ON MALICIOUS PROSECUTION AND SLANDER OF TITLE

Houston/Barlow move for summary judgment on the claim of Malicious Prosecution and for Slander of Title.

### A. Malicious Prosecution Elements

■ The basic elements of the tort of malicious prosecution of a civil matter are (1) the initiation of a prior proceeding, (2) without a reasonable belief in the possibility of the suit being successful (i.e., probable cause), (3) termination of that proceeding in favor of the present plaintiff, and (4) malice. *Drummond v. Desmarais*, 176 Cal.App.4th 439, 449, 98 Cal.Rptr.3d 183 (2009); *Cantu v. Resolution Trust Corp.*, 4 Cal.App.4th 857, 881, 6 Cal.Rptr.2d 151 (1992) ("The termination must demon-

strate the innocence of the accused."); *accord Antounian v. Louis Vuitton Malletier*, 189 Cal.App.4th 438, 448, 117 Cal. Rptr.3d 3, 12 (2010).

Houston/Barlow argue that plaintiffs cannot establish that (1) the criminal complaint was instituted at the direction of Houston/Barlow, (2) there was a favorable termination, or (3) malice.

### 1. *Instituted at the Direction of Defendants*

Houston/Barlow argue that the tort fails because plaintiffs cannot establish Houston/Barlow instituted the criminal action against Stamas. Houston/Barlow did not make any false report to the County about Stamas' conduct on the property. The report of Stamas' conduct on the property resulted in Herman's own investigation, research and decision to file criminal charges.

Plaintiffs argue that Houston/Barlow procured the criminal complaint against Stamas. (Doc. 149, Stamas Opposition p. 2–5.) Plaintiff argue that "without the Houston Offer, there would have been no criminal charges filed" and that "the Houston's sought out the prosecution of Plaintiff Stamas." (*Id.* at 3.) Stamas notes that the criminal complaint "was based solely on the Houston Offer" and it was used to threaten Stamas and try to stop the road maintenance Stamas was performing. (*Id.*)

### (A) Falsity of Reporting

■ As noted by the California Supreme Court, "[c]ases dealing with actions for malicious prosecution against private persons require that the defendant has at least sought out the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime." *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 720, 117 Cal.Rptr. 241, 527 P.2d 865 (1974). Falsity of reporting is a significant factor. *See Rupp v. Summerfield*, 161 Cal.App.2d 657, 665, 326 P.2d 912 (1958) (defendant initiated the action by making a false report to law enforcement officer and intentionally and knowingly testified falsely at the preliminary hearing); *accord William v. Hartford Ins. Co.*, 147 Cal.App.3d 893, 898, 195 Cal. Rptr. 448 (1983) (defendant caused its employees to make false statement to law enforcement personnel and caused them to testify falsely before the grand jury).

■ There is no evidence of falsity of information given by Houston/Barlow to Deputy County Counsel Herman. The information reported, that Stamas was conducting repair work on the road, was true. It is undisputed that Houston/Barlow reported Stamas was on Cascadel Road with a work crew performing some form of maintenance.[11] Houston/Barlow reported the activity to their attorney, who in turn contacted the County Counsel for Madera County. Deputy County Counsel Herman called Houston/Barlow who reported the bulldozers and earthmovers on the road. Houston/Barlow forwarded to Herman via email numerous pictures of Stamas and the work crew conducting repair work on the road. There is no evidence that the photographs falsely depict what was occurring on the road. There is no evidence that any information provided to Herman by Houston/Barlow was false or deceptive.

Stamas' underlying challenge to the criminal charges is his contention that the Houston Offer of Dedication is "an improper and illegal dedication." Stamas challenges the legality of the Offer of Dedication as the basis for his criminal prosecution. Stamas, however, cannot bootstrap a challenge to the Houston Offer of

---

11. The parties dispute whether the work on the road was "maintenance" or resulting in damage to the road. For purposes of the motion on the malicious prosecution claim, whether the road was maintained or damaged is not relevant.

Dedication through a cause of action for malicious prosecution. In a malicious prosecution action, the focus is upon the actions of the defendant, here Houston/Barlow, in procuring the prosecution. The undisputed evidence shows that the Houston/Barlow sent an email to Herman and had conversation with Herman either before or after the email. That is the extent of the Houston/Barlow contact. There is no evidence that Houston/Barlow were further involved in the decision that criminal charges should be brought. Whether the Offer of Dedication ultimately turns out to be valid or invalid is irrelevant into whether Houston/Barlow falsely procured Stamas' criminal prosecution. There is simply no evidence that the conduct for which Mr. Stamas was prosecuted, repairing the road, was false or falsely reported by Houston/Barlow and no evidence Houston/Barlow perjured their testimony in any fashion.

Stamas argues that the criminal charges against him lacked merit. He argues that the work on the road was not "criminal" and that the prosecution was brought for an improper purpose. (Doc. 149, Stamas Opposition p. 8–9.)

The merit of the criminal charges is not relevant to the malicious prosecution claim because plaintiff has not shown any falsity in the information that was provided by Houston/Barlow. There is no evidence Houston/Barlow made the decision to bring criminal charges against Stamas. Houston/Barlow reported the road mainte-

nance activity to Herman who in turn made the decision to prosecute. The malicious prosecution cause of action tests the actions of Houston/Barlow, not the actions of employees of Madera. Here, plaintiffs' evidence is lacking that Houston/Barlow falsely did anything which resulted in charges against Stamas.[12]

### (B) Independent Investigation

Houston/Barlow present evidence that the prosecution was independently procured. They did not "procure" the filing of the criminal complaint. Houston/Barlow present evidence that Herman conducted an investigation into the merits of the prosecution and independently determined to prosecute.

■ "[A] person who merely alerts law enforcement to a possible crime and a possible criminal is not liable if, law enforcement, on its own, after an independent investigation, decides to prosecute." *Williams v. Hartford Ins. Co.*, 147 Cal. App.3d 893, 898, 195 Cal.Rptr. 448 (1983). Herman testified that he researched Title 10 of the Madera County Code and determined that a permit was required to do the work on the road that Stamas was performing. (Doc. 150, Plaintiff's disputed fact no. 33.) Herman then decided, after consultation with County Counsel, to file criminal charges.

Stamas argues that there was no independent investigation. Stamas notes that the criminal complaint was filed against him within 24 hours of the Houston/Barlow report.[13] Stamas notes that there are in-

12. Indeed, there is testimony from the Road Commissioner that while the work Stamas had done on the road did not "damage" the road, the pictures of the road work "showed the degree of work that is above what we normally do as routine maintenance for a dirt road." (Doc. 155–1, Hoevertsz depo. p. 23–24; Doc. 151–7, Exh. G, Hoevertsz depo. p. 28–29 (no damage to road).) The charges for which Stamas was prosecuted were for failing

to obtain permits for work in excess of regular road maintenance. (Doc. 131–1, Exh. 35.)

13. Stamas argues "There is not enough time between 10:32 am on Thursday the fourth, and Friday at 3:25 pm on the fifth, in Bass Lake, an hour from Madera, to perform "his own factual investigation" and draw up a complaint and deliver it to Bass Lake on a Friday afternoon. There was no scene of the "crime" visit, no phone calls to Stamas, the

consistencies in testimony between District Attorney Prentice and Deputy District Attorney Herman as to who reviewed the criminal complaint, and who would take charge of prosecution. Stamas notes that there is failure of the pictures to show any road damage and that there has not been any other criminal prosecution for similar type conduct.

■ It is undisputed that there was some independent investigation of the information originally supplied by Houston/Barlow, and Herman independently chose whether and what crimes to prosecute against Stamas. Stamas disputes the scope of the investigation because he was not contacted and that the short time frame from report of the road maintenance to filing the complaint. But, Stamas does not point to any evidence by Houston or by Barlow which influenced what otherwise was a independent decision of Herman to prosecute. The evidence is undisputed that Herman conducted an investigation and independent research. He researched the County Ordinances to determine which if any laws were violated. He contacted Houston. He reviewed photographs and an old County file. He had his complaint reviewed by a Deputy District Attorney. Thus, the evidence shows an independent investigation.

Stamas disputes the independent investigation, but Stamas only points to evidence as to who spoke to whom and when. While the scope of the investigation may not have been expansive, it is undisputed that there was an investigation in which Herman independently determined to bring criminal charges. There were only two contacts between Herman and Houston/Barlow: (1) the Email from Houston to Herman forwarding the emails, and (2) a telephone conversation between Herman and Houston.[14] There is undisputed evidence that Herman "passed the complaint by" the supervising Deputy District Attorney, before Herman filed the complaint. Stamas does not identify evidence which refutes the investigation Herman identified he performed before filing the criminal charges. Accordingly, there is no issue of fact the Houston/Barlow criminal proceedings were instituted against Stamas because Herman conducted an independent investigation.

### 2. *No Favorable Termination*

■ Houston/Barlow argue Stamas cannot show a favorable termination of the criminal proceedings. The hearing transcript establishes that the charges were dismissed because the parties entered into a "Civil Settlement Agreement." Houston/Barlow argue that the transcript indicates that the charges were not dismissed because Stamas was innocent, but rather the charges were dismissed in return for Stamas agreeing not to do any maintenance on the road. The dismissal does not indicate in any way that Stamas was innocent of the charges. (Doc. 125–1, Houston/Barlow P & A p. 17.)

■ The favorable termination element of a malicious prosecution action is established by showing that termination of

Association, the contractor or anyone else, least of all County Code Enforcement who normally handles code violations." (Doc. 150, Plaintiffs' Disputed Fact no. 34.)

**14.** Stamas disputes that the telephone conversation with Houston occurred before Herman filed the criminal complaint. See Doc. 150, Plaintiffs' Disputed fact no. 28 ("The email reads as an initial contact stating, in part,

near the end .Please feel free to contact me or my wife, Linda Barlow, by phone or email." ... There is no indication of a previous phone call or follow up to a call. ... This supports the argument that his email to Herman was an initial contact.') Regardless of the timing of the call, there is evidence of some investigation of legal issues involved in Stamas' conduct.

the underlying lawsuit reflected on the merits of the action and the plaintiff's innocence of the misconduct alleged. *Ross v. Kish,* 145 Cal.App.4th 188, 51 Cal. Rptr.3d 484 (2006). In order to show termination, the plaintiff need not show a verdict or a final determination on the merits; legal termination is enough. The termination of the prior proceeding must reflect on the merits of the prior action (*Berman v. RCA Auto Corp.,* 177 Cal. App.3d 321, 222 Cal.Rptr. 877 (1986)) and reflect the plaintiff's innocence of the alleged misconduct. *Warren v. Wasserman, Comden, & Casselman,* 220 Cal.App.3d 1297, 271 Cal.Rptr. 579 (1990).

A settlement of an action is not generally a "favorable termination."

"A dismissal resulting from a settlement generally does not constitute a favorable termination. In such a case the dismissal reflects ambiguously on the merits of the action because it results from the joint action of the parties, leaving open the question of the defendant's guilt or innocence."

*Fuentes v. Berry,* 38 Cal.App.4th 1800, 1808, 45 Cal.Rptr.2d 848 (1995). The test is whether or not the termination tends to indicate the innocence of the defendant or simply involves technical, procedural or other reason that are not inconsistent with the defendant's guilt. *Haight v. Handweiler,* 199 Cal.App.3d 85, 88–89, 244 Cal. Rptr. 488 (1988).

Here, there is no dispute as to the termination of the prosecution. The prosecution was terminated on the record, with a court transcript and resulted in a dismissal of charges for a civil settlement. The transcript shows that the resolution of the criminal proceeding was accomplished in open court, with a Superior Court judge presiding. (Doc. 131–1, Exh. 38 Transcript p. 4–6.) The transcript indicates that "in return for Mr. Stamas agreeing to certain conditions the people are willing to dismiss all charges." (Doc. 131–1, Exh. 38 Transcript p. 3.) The main agreement was that "Mr. Stamas will agree not to do any maintenance personally as an individual on the subject section of the property." (Doc. 131–1, Exh. 38 Transcript p. 3.) The Judge of the Superior Court took the settlement and agreement on the record. (*Id.*) The Court supervised the settlement agreement and authorized the resolution of the criminal action through the settlement. The transcript does not indicate a finding of "innocence" for Stamas' actions. A settlement generally will not be considered a favorable termination, because there was nothing that established the innocence of the malicious prosecution plaintiff.

Stamas argues that a favorable termination occurred because a voluntary dismissal or failure to prosecute is considered a favorable outcome, citing *MacDonald v. Joslyn,* 275 Cal.App.2d 282, 289, 79 Cal. Rptr. 707 (1969). In *MacDonald,* the court observed that a voluntary dismissal of a civil action ordinarily is not a dismissal on technical grounds and therefore may constitute a favorable termination which will support an action for malicious prosecution. *Id.* at p. 289, 79 Cal.Rptr. 707. Stamas argues that he entered into a civil settlement agreement with Madera and Madera agreed to affect a dismissal of the criminal charges. (Doc. 149, Stamas P & A p. 10.)

The dismissal of the criminal proceeding is not a "favorable" termination. *MacDonald v. Joslyn* is distinguishable because it involved a civil proceeding where the underlying civil action was voluntarily dismissed by the then-plaintiff/later-named-defendant. Here, the criminal action was not "voluntarily dismissed" at the request of Houston/Barlow and even if it were, the voluntary dismissal is not favorable. It is undisputed that Stamas agreed to no longer perform road maintenance,

the very actions for which he was charged, in exchange for dismissal of the charges. This agreement does not indicate "innocence." *Cantu v. Resolution Trust Corp.,* 4 Cal.App.4th 857, 881, 6 Cal.Rptr.2d 151 (1992) ("The termination must demonstrate the innocence of the accused.")

Plaintiff argues the termination was "favorable" to plaintiff because he received what he wanted—code compliant access—and then the action was dismissed. (Doc. 149, Stamas Opposition p. 10.) Plaintiff contends it was indicative of his innocence of the charges and prevailing with code compliant access.

Where a proceeding is terminated other than on its merits, the reasons underlying the termination must be examined to see if they reflect the opinion of either the court or the prosecuting party that the action would not succeed. "[W]hen the underlying action is terminated in some manner other than by a judgment on the merits, the court examines the record 'to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed.' " *Ross v. Kish,* 145 Cal.App.4th at 198, 51 Cal.Rptr.3d 484 (underlying action was dismissed as a discovery sanction). Should a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact. *Id.*

Stamas' argument of "fully code compliant" access does not raise an issue of fact of favorable termination. As stated in the Court's discussion of the breach of contract cause of action, *infra,* the term "fully code compliant" meant "road maintenance;" any such road maintenance would be "fully code compliant." The term did not mean creating a 60–foot roadway. The prosecution terminated with Stamas agreeing not to perform road maintenance, the misdemeanor for which he was charged. In exchange, Stamas would get road maintenance performed by Houston which was fully code compliant. This termination does not raise an issue of fact of innocence. Accordingly, there is no issue of fact as to whether the criminal action was favorably terminated in Stamas' favor.

### 3. *Showing of Malice*

Houston/Barlow argue that they "legitimately believed Mark Stamas was breaking the law and causing damage to their property." (Doc. 125–1, Houston/Barlow p. 17.) Houston/Barlow argue there is no evidence of malice.

The court does not reach this issue. The Court finds that the malicious prosecution action cannot proceed because of the failure of evidence on the elements that the criminal complaint was instituted at the direction of Houston/Barlow, and on the element of a favorable termination.

## B. Slander of Title Cause of Action

The slander of title cause of action challenges the Houston Offer of Dedication. (Doc. 85, TAC ¶ 52.)

Slander of title occurs when there is an unprivileged publication of a false statement which disparages title to property and causes pecuniary loss. *Stalberg v. Western Title Ins. Co.,* 27 Cal. App.4th 925, 929, 32 Cal.Rptr.2d 750, 752 (1994). Elements of slander of title are: (1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss. *Manhattan Loft, LLC v. Mercury Liquors, Inc.,* 173 Cal.App.4th 1040, 93 Cal.Rptr.3d 457 (2009).

Houston/Barlow argue that Stamas is not able to establish several elements of the cause of action. Houston/Barlow argue that Stamas cannot show "falsity" because there are no facts to support a finding that anything in the Houston Offer of Dedication is false. Houston/Barlow argue that Stamas cannot not establish "title" to

the property. To the extent Stamas contends he has an "interest" in Cascadel Road, Stamas cannot establish he had proper title to any interest in Cascadel Road as there has been no prior judicial determination that Stamas acquired title to or an interest in Cascadel Road. (Doc. 125–1 Houston/Barlow p. 20.) Houston/Barlow also argue that Stamas cannot establish damage, as their property has never been for sale or decreased in value. Finally, Houston/Barlow argue that the Houston Offer was a privileged communication and proceed under 47(b)(3) because it was made a part of an official proceeding authorized by law.

Stamas argues that the Houston Offer legally has the effect of a blank piece of paper. It was unilaterally drawn up and recorded by persons with no greater legal interest in the Right of Way than the general public. Ultimately, although it purports to eliminate Plaintiffs' interest in the easement, its effect is not binding. (Doc. 149, Stamas Opposition p. 15–16.)

### 1. *Falsity of the Houston Offer*

Houston/Barlow argue that the claim for slander of title must fail because there are no facts contained in the Houston Offer of Dedication which are false. (Doc. 125–1, Moving papers p. 20.)

▆▆▆ The recordation of an instrument facially valid but without underlying merit will give rise to an action for slander of title. *Seeley v. Seymour*, 190 Cal. App.3d 844, 857, 237 Cal.Rptr. 282 (1987). A recorded document may have no effect on title yet still give rise to a slander of title cause of action. *Id.* (Rejecting argument that if the recorded document is facially insufficient to create a legal "cloud," the party whose property is affected is deprived of an action for wrongful disparagement of title.)

Houston/Barlow attempt to distinguish *Seeley* on the basis that the Houston Offer of Dedication has not shown up in title reports. Houston/Barlow argue that in *Seeley* the purported lease agreement showed up on title reports. Houston/Barlow argue the Houston Offer has no legal impact because it has never been accepted, there is no evidence it has appeared on any title reports in connection with Lot 38 and it has had no impact on Plaintiffs' ability to sell their property. (Doc. 154, Houston/Barlow Reply p. 9.)

It is undisputed that the Houston Offer of Dedication has been recorded. It is undisputed that Houston Offer of Dedication affects Cascadel Road. Because the quiet title cause of action has not been adjudicated, the Court cannot determine if title or interest in the road is impacted.

### 2. *Title in the Property or Interest in the Property*

Houston/Barlow argue that Stamas does not have an interest in the property. They argue that Stamas' interest has arisen from adverse possession which does not support a claim for slander of title. Houston/Barlow argue that because Stamas is not the owner of the property allegedly slandered, Stamas cannot maintain the cause of action.

▆▆ A recorded document may have no effect on title yet still give rise to a cause of action for slander of title. *Gudger v. Manton*, 21 Cal.2d 537, 543, 134 P.2d 217 (1943) (if the publication as reasonably understood casts doubt on the existence and extent of another's interest in property, it is disparaging to his or her title where it is so understood by the person to whom it is published) (overruled in part on other grounds by, *Albertson v. Raboff*, 46 Cal.2d 375, 295 P.2d 405 (1956)). "[T]he key to whether the defendant's conduct is actionable is not whether he has succeeded in casting a legal cloud on the plaintiff's title, but whether he could reasonably foresee that 'the conduct of a third person as

purchaser or lessee ... might be determined thereby.' " *Seeley,* 190 Cal.App.3d at 857, 237 Cal.Rptr. 282.

It is undisputed that the Houston Offer of Dedication has been recorded. It is undisputed that Houston Offer of Dedication affects Cascadel Road. Because the quiet title cause of action has not been adjudicated, the Court cannot determine if title or interest in the road is impacted.

### 3. *Showing Damages from Slander of Title*

■ To establish liability for slander of title the owner of the property interest must suffer an economic loss as the direct result of the slanderous publication. *Hill v. Allan,* 259 Cal.App.2d 470, 489, 66 Cal.Rptr. 676, 689 (1968). In an action for wrongful disparagement of title, a plaintiff may recover (1) the expense of legal proceedings necessary to remove the doubt cast by the disparagement, (2) financial loss resulting from the impairment of vendability of the property, and (3) general damages for the time and inconvenience suffered by plaintiff in removing the doubt cast upon his property. *Seeley v. Seymour,* 190 Cal.App.3d 844, 865, 237 Cal. Rptr. 282, 293 (1987). The damage usually consists of a loss of prospective purchaser or lessee and the expense of litigation to remove the doubt cast on the title. *Wright v. Rogers,* 172 Cal.App.2d 349, 366, 342 P.2d 447 (1959)Rest. Torts, § 633. It is not necessary, however, to show that a particular pending deal was hampered or prevented, since recovery may be had for the depreciation in the market value of the property. *Hill,* 259 Cal.App.2d at 489, 66 Cal.Rptr. 676. The disparagement and ensuing damage may be established by other than showing a loss of a particular potential sale. *Glass v. Gulf Oil Corp.,* 12 Cal. App.3d 412, 96 Cal.Rptr. 902 (1970).

■ Here, plaintiff has not introduced evidence that it has either lost a potential sale (impairment of vendability) or that the property has depreciated in market value.[15] There is no evidence of the loss of any current or potentially future sale. There is no evidence of the loss of value of the plaintiffs' property from the Houston Offer of Dedication.

There is authority that plaintiff may recover the expense of legal proceedings necessary to remove the doubt cast by the disparagement (*See Forte v. Nolfi,* 25 Cal. App.3d 656, 687–88, 102 Cal.Rptr. 455 (1972)), but plaintiffs do not offer such evidence. (See Doc. 135, Plaintiff's facts; Doc. 149, Plaintiffs' Opposition p. 16–17; Doc. 150, Plaintiffs' Response facts.) Therefore, there is no competent evidence before the court as to the damages plaintiffs may have suffered as a result of the recording of the Houston Offer of Dedication.

Stamas argues that the damage is the "Lot 38 no longer has sufficient legal access so long as the Houston Offer and its enforcers cloud the record." Stamas further argues that he is prevented from ever building upon or improving their lot and the access endangers their wildfire escape route, citing testimony of County Counsel Prentice.[16] (Doc. 149, Stamas Opposition p. 16.)

---

**15.** Houston/Barlow note that Stamas does not have an expert witness who could opine as to the depreciation in market value from the Houston Offer of Dedication.

**16.** Stamas also refers to a letter from the Department of Forestry for the proposition that improvement could not take place on his property. (Doc. 151, Exh. V.) Accepting this letter as true, in light of the absence of necessary foundation and the hearsay character, the letter states that "[a] mere offer of dedication does not trigger the road width requirement." This language indicates that the Houston Offer of Dedication would not require compliance with specific road widths for purposes of improvements.

**1070**

Plaintiff misconceives the damages recoverable under a claim for slander of title. Plaintiff must show a "financial loss from 'impaired vendability' of the property." *Seeley,* 190 Cal.App.3d at 865, 237 Cal.Rptr. 282. Plaintiffs have not cited to any authority, and the Court has not found any, which permit recovery for "impaired access" of an easement, absent some showing of impaired vendability or property depreciation. Here, there is no evidence of impaired salability, even considering the evidence in the light most favorable to plaintiffs. Even accepting the evidence of County Counsel Prentice at face value, there is nothing that relates his statement to the Houston Offer of Dedication. This evidence does not show that plaintiff's property has suffered any loss in salability or depreciation in value. It would be speculative for this Court to conclude that the property has been damaged without appropriate testimony establishing a loss in value. Therefore, plaintiffs have not carried their burden of proof on this element.

### 4. *Litigation Privilege*

Houston/Barlow argue that the Houston Offer was a privileged communication and protected under 47(b) because it was made a part of an official proceeding authorized by law.

There is no liability for a slander of title if the defendant was privileged in making the disparaging statement. Cal.Civ.Proc. 47(b) provides:

> "b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . ."

Section 47(b) promotes access to the courts for the redress of grievances unhampered by the fear of derivative tort liability. *Silberg v. Anderson,* 50 Cal.3d 205, 213, 266 Cal.Rptr. 638, 786 P.2d 365 (1990) ("Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.]")

A communication to an official agency which is designed to prompt action is deemed part of an official proceeding for purposes of statutory litigation privilege. *Ghafur v. Bernstein,* 131 Cal.App.4th 1230, 1235, 32 Cal.Rptr.3d 626 (2005) (letter to superintendent of schools requesting investigation). A statement must be made to an official agency having the power to address the complaint made. *Katz v. Rosen,* 48 Cal.App.3d 1032, 121 Cal.Rptr. 853 (1975) (letter to local bar association complaining of an attorneys alleged unethical conduct). Official proceedings include proceedings "which resemble judicial and legislative proceedings" such as those within and before county boards of supervisors. *Young v. County of Marin,* 195 Cal.App.3d 863, 872, 241 Cal.Rptr. 169 (1987). The privilege extends to preliminary communications to such boards or agencies designed to induce or influence their actions. *Id.*

The offer of dedication is a communication to an official agency. Real property may be dedicated to a city or county for any public purpose by the recording of an offer of dedication executed and acknowledged by the owner in the same manner as any conveyance of real property. Gov.Code § 7050 (dedication by conveyance for public purposes). The offer may be for use of the property for streets, highways, paths, alleys, access or abutter's rights, drainage, open space,

parks,. or any other public use. *Id.* A separate instrument of dedication under this statute is an alternative to any other procedure for dedication authorized by law. *Id.* Once the offer is recorded, it is irrevocable and can be accepted by the city council or board of supervisors of the city or county. *Id.* The owner may specify the purpose of the dedication in the recorded offer, and the public entity would be restricted to this purpose. *Id.* Madera has enacted Municipal Code § 17.76 which establishes the procedure for Madera to receive, review and decide upon offers of dedication. (See Doc. 139, Exh. P.) The Municipal Code includes an application process, review considerations, approval criteria and an appeal process. (See Doc. 139 Exh. P (§§ 17.76.010–17.76.090.))

Here, the Court finds that the offer of dedication is a .privileged communication. The Houston Offer of Dedication is a document offered to induce action by the County of Madera. It is designed to prompt action by Madera. The offer of dedication and the Madera proceeding are authorized by law. *Loshonkohl v. Kinder,* 109 Cal. App.4th 510, 514, 135 Cal.Rptr.2d 114, 116 (2003) (creates an absolute privilege from liability for a publication made in any legislative or judicial proceeding or "any other official proceeding authorized by law."), *cert. denied,* 541 U.S. 938, 124 S.Ct. 1679, 158 L.Ed.2d 359 (2004). Therefore, it falls within the privilege for official proceedings.

## MOTION FOR SUMMARY JUDGMENT ON DUE PROCESS, EQUAL PROTECTION AND BREACH OF CONTRACT

Madera challenges the causes of action for violation of Due Process, for violation of Equal Protection and for Breach of Contract.

### A. Federal Constitutional Violations

The First and Second Causes of Action are for violation of Civil Rights, 42 U.S.C. § 1983, for deprivation of Due Process and Equal Protection. Plaintiffs allege that they have been denied due process and equal protection in the access right or easement afforded by Cascadel Road up to the originally granted 60 feet width. Plaintiffs allege that they have been deprived of their property right to the 60–foot wide easement. Plaintiffs contend that the Houston Offer of Dedication and the Madera's quit claim in 2007 deprived plaintiff of the 60 foot easement by irrationally creating, recording and enforcing the Houston Offer without notice or hearing, eliminating Plaintiffs' Easement, and narrowing the road to a mere twelve (12) feet.

County contends that looking at the known history of the Right of Way, the Madera's 2007 quit claim could not have deprived plaintiff of any easement rights they had in the road over Lot 1, the Houston/Barlow property.

### 1. *Claim of Violation of Substantive Due Process*

 Substantive due process addresses improper governmental interference with property rights and irrational actions by government decision makes. *County of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

 The essence of a claim for substantive due process is that the governmental action is unreasonable and bears no rational relationship to a legitimate state interest. The Supreme Court explained that a governmental action will violate substantive due process if it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926). The touchstone of due process is protection of the individual

against arbitrary action of government. *County of Sacramento v. Lewis,* 523 U.S. at 845, 118 S.Ct. 1708.

### (A) A Property Right Must be Deprived

 The United States Supreme Court has recognized that property rights are not created by the Constitution. To state a claim for violation of substantive due process, a land owner must have a protected property interest. *American Mfgrs Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 119 S.Ct. 977, 143 L.Ed.2d 130 (1999):

> "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' ... Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process." (Citations omitted.)

Property rights are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Barthuli v. Board of Trustees,* 19 Cal.3d 717, 722, 139 Cal.Rptr. 627, 566 P.2d 261 (1977) (same). Indeed, to determine whether a protected property interest exists in a given instance, courts look to state law. *WMX Techs., Inc. v. Miller,* 80 F.3d 1315, 1318 (9th Cir.1996) ("We look to state law to define the dimension of a protected property interest.") Property rights cannot be created by a person's unilateral needs. To have a property interest in a benefit, a person must clearly have more than an abstract need or desire for it, or a unilateral expectation of it. Instead, the person must have a legitimate claim of entitlement to the benefit. *See, generally, Board of Regents of State Colleges v. Roth,*

408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

### (B) The 1888 Deed for Right of Way

On June 16, 1888, George Wagner signed a deed with convey to the County "the Right of Way for a Public Road, and all incidents there to" and described as "A Strip of land sixty feet wide" as located by the lost road survey.

Plaintiffs contend this conveyance was a "fee" conveyance as opposed to a lesser interest.

Fee simple title generally is presumed to pass by the grant of real property unless it appears from the grant that a lesser estate was intended. Civ.Code § 1105. The general presumption of fee title conveyance is subject to more specific statutory presumptions applicable to certain types of real property acquisitions. Under Civ.Code §§ 831, 1112, an easement (rather than fee title) is presumed to pass by grant of property to government for use as public highway.

 Here, the Court finds the 1888 Deed conveyed a right of way. The plain language of the 1888 Deed indicates a right of way was conveyed and not a fee simple. The 1888 Deed refers to a "right of way" to be used for a public road. Therefore, the original grant in the 1888 Deed was for a right of way.

The road's location is the bane of this litigation. The parties dispute whether the right of way conveyed in the 1888 Deed encompasses some or all of what is now Cascadel Road. County acknowledges that the 1888 right of way was an accepted dedication. (Doc. 133–1, Madera P & A p. 21.) There is no evidence before the Court that the 1888 Deed was part of the county highway system or maintained by Fresno County. It is undisputed that Cascadel Road or the 1888 Deed right of way

was incorporated into the Madera County highway system.[17] The Court cannot make the determination as to Cascadel Road's location as a matter of law on the evidence before it.

### (C) Inability to Adjudicate Subsequent Transfers

The parties dispute the effect of various transfers of right of ways, offers of dedications, exceptions in deeds, as to whether Cascadel Road is or should be 60 foot wide, is a public road or a private road, or something else.

#### Public use "quit claimed away"

In 1956, when Madera quitclaimed the right of way described in the 1888 Deed to the developer of the Cascadel Subdivision, Cascadel Ranch Properties, Inc., presumably the right to public use did not get quitclaimed away. However, there is no evidence of this fact and the Court is not cited to controlling authority. In 1955, the Legislature amended Streets and Highways Code § 941 to provide that no road would become a highway by public use. The court in *Western Aggregates, Inc. v. County of Yuba*, 101 Cal.App.4th 278, 130 Cal.Rptr.2d 436 (2002) held that this statutory change did not invalidate existing roads. If a road was accepted for public use by maintenance and repair by the public prior to 1955, no formal acts of acceptance were made necessary by the amendments to § 941. The Court cannot determine what interest exactly was quitclaimed away based on what is before it.

Stamas argues that the 1967 quitclaim from the County to Cascadel Ranch Properties, for the 60 foot right of way was invalid because it attempted to abandon improperly a public right of way. But Stamas has not cited the applicable Streets and Highways Code on the date of the 1967 quitclaim. The Court cannot determine whether the 1967 quitclaim property impermissibly abandoned the right of way, just as the 1956 quit claim may have done. The parties have not carried their burdens on the interest Madera may have held in the road during these time frames, and in relation to the quit claims which purported to quit claim Madera's interests.

#### Public Road Significance

Plaintiffs place much significance to Madera's admission that Cascadel Road is a "public" road. Plaintiffs argue that "[t]he fact that Cascadel Road/the 60 foot Right of Way is a public highway has been admitted by the County of Madera." (Doc. 134-1, Plaintiff's Motion p. 9.) The confusion plaintiff seems to have is equating a "public" road with that of a "county" road.[18]

Use by the public may be acceptance *by the public*, but it "does not cast any maintenance or liability burden on the County" until the road "has been explicitly accepted *by the County*." *Hanshaw v. Long Valley Road Assn.*, 116 Cal.App.4th at 480, 11 Cal.Rptr.3d 357 (emphasis in original). "Although a road is a 'public street' and subject to 'public control,' it

**17.** The term "county highway" includes any public highway, road, street, avenue, alley, lane, drive, way, place etc. Str. & Hwy § 960.5.

**18.** Plaintiffs summarize Madera's arguments as follows: It appears as if the County is arguing that it quitclaimed "its" interest in the 1888 Road, despite the Road being public, but did not grant away the public's interest in the Road. But, the two are inseparable, and by "quitclaiming" its interest in the Road, the County gave the public's interest to the Houstons. Further, although the County attempts to make an argument that they only quitclaimed "whatever property interest it may have had in Lot 1," the County has already admitted that this interest was meant to encompass the 60 foot Right of Way offered for dedication by Cascadel Ranch Properties. (Doc. 158, Plaintiffs' Reply p. 3.)

need not necessarily be maintained by the local governing entity." All roads over which the public has a right to travel, whether express or prescriptive, are 'public' roads. 'Public' roads, however, are not 'county' roads until accepted as such by appropriate resolution of the board of supervisors. Streets. & Hy. Code, § 941; *See Hays v. Vanek,* 217 Cal.App.3d 271, 284, 266 Cal.Rptr. 856, 862 (1989) (The inference that public use constitutes acceptance of an offer of dedication is dependent in large part on the fact that the public is using the piece of property offered).

Without an accepted offer of dedication, the full 60-foot wide easement did not become a county road. Public use may be proof of the roads' acceptance. *Hanshaw v. Long Valley Road Ass'n,* 116 Cal. App.4th 471, 11 Cal.Rptr.3d 357 (2004) (The filing of a subdivision map delineating a street thereon is an offer to dedicate the land identified; use of the land so identified by the public for such purposes over a reasonable period of time constitutes an acceptance of the offer so made.) There is no evidence that Madera ever maintained the Road. Private roads over which the public has the right to travel are "public" roads, but they do not become county roads until they are accepted by appropriate resolution of the board of supervisors. 45 Op. Atty. Gen. 98.

 The statutes do not impose an obligation on the County to accept, improve, repair, maintain or exercise any control over the streets shown on the subdivision map until the County, in its discretion, by action of its board of supervisors, should determine to accept such streets as party of the county road system. *Kern County v. Edgemont Dev. Corp.,* 222 Cal.App.2d 874, 878–879, 35 Cal.Rptr. 629 (1964); Sts. & Hy Code § 941 (no road may become a highway by public use). The conditional acceptance of the subdivision map does not constitute the streets as part of the county

road system. *Kern County,* 222 Cal. App.2d at 879, 35 Cal.Rptr. 629. A dedication is a mere offer. *Kern County,* 222 Cal.App.2d at 879, 35 Cal.Rptr. 629. See *Copeland v. City of Oakland,* 19 Cal. App.4th 717, 722, 23 Cal.Rptr.2d 719 (1993) (no liability for a road until dedication is unconditionally accepted by public entity). Thus, while Cascadel Road may be a "public" road, it may not be "county" road, for which Madera has no property interest.

It is undisputed that the 1969 Offer of Dedication of a 60 foot road has not been accepted. Plaintiffs' cannot claim that they have a constitutional right in an Offer of Dedication. This Court has already held, in a motion to dismiss, that plaintiffs' do not have a property interest in an offer of dedication. (See Doc. 41, August 17, 2009 Order p. 12–13 ("As a matter of law, plaintiffs cannot allege that they have a property interest in the Offer of Dedication."))

Nonetheless, here, the Court cannot determine as a matter of law that Madera lacked a property interest in Cascadel Road and acted in some fashion to deprive plaintiff of an easement interest. The record of title simply is not explained adequately to the Court. Many of the pertinent documents are illegible. The parties offer minimal expert testimony of the meaning of terminology shown on deeds or their effect in relation to, for instance, the Subdivision Map Act (Cal.Gov.Code § 66410 e seq.), and the prior versions of the Map Act in existence during the history of the road. For instance, the parties jointly submitted testimony of Stephen Jones, a land surveyor, who reviewed deed and maps in relation to the road. (Doc. 131–1, Jones Decl. Exh. 29.) He opines as to the effect of certain conveyances:

"Research of the records discloses that at the time of the execution of the offer of dedication the party making the offer of dedication, Cascadel Ranch Proper-

ties, Inc., was *not* the owner of the Houston parcel. Attached here to as Exhibit A is a copy of the deed divesting Cascadel Ranch Property, Inc. of its ownership of the Houston property. (*Id.* (Emphasis in original.))

The parties, however, did not attach exhibits referred to in his declaration. The Court declines to speculate to which exhibits Mr. Jones refer from among the voluminous documents submitted in these three motions. Further, Mr. Jones does not address the right of way that Cascadel Ranch Properties was granted at the time it made the dedication and what impact on the road dedication this may have had. (See the 1956 Madera Quitclaim and the 1967 quitclaim.) As a further example of lack of evidence is Mr. Rasmussen's declaration, even if the Court were to consider the declaration over the objections. Mr. Rasmussen does not trace the history of the road. He was retained as an expert to opine as to the physical location of the original 1888 Deed right of way.[19]

The Court, at this point, need not resolve the uncertainties of Cascadel Road. The Court is confident that if the public had a right to a 60 foot road, and it is not clear that it did, that right still exists. Madera cannot abrogate the public's rights. However, the Court cannot, on the record presented, determine the extent or location of the public's right and the effect of Madera's conveyances. This determination will be left to resolution in the quiet title cause of action.

### (D) Advance Any Legitimate Governmental Purpose

█ "To state a substantive due process claim, the plaintiff must show as a

threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel,* 540 F.3d 1082, 1087 (9th Cir.2008) (citing *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.,* 509 F.3d 1020, 1026 (9th Cir.2007)). However, the protection from governmental action provided by substantive due process has most often been reserved for the vindication of fundamental rights. *See Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."). Where, as here, the plaintiffs rely on substantive due process to challenge governmental action that does not impinge on fundamental rights, "we do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did." *Halverson v. Skagit County,* 42 F.3d 1257, 1262 (9th Cir.1994).

█ If deprivation of property is shown, and this Court assumes for purposes of Madera's motion that plaintiff has made this showing, "the 'irreducible minimum' of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose." *Shanks,* 540 F.3d at 1088. In the land use context, "only egregious official conduct can be said to be arbitrary in the constitutional sense: it must amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." *Shanks,* 540

---

**19.** Mr. Stamas offers his testimony, and prepared maps, of the location and history of Cascadel Road. From the Court's review of Mr. Stamas' testimony, and considering the objections, Mr. Stamas does not have the expertise to describe the subdivision maps meanings and interpretations. The graphic depictions provided by Mr. Stamas were of visual assistance, but the Court cannot rely upon the statements made therein or his interpretations of the Subdivision Maps.

F.3d at 1088 (internal quotation marks omitted); *accord North Pacifica LLC v. City of Pacifica,* 526 F.3d 478, 485 (9th Cir.2008) (In order to succeed on their substantive due process claim, plaintiffs "must show that the City's delays in processing its application lacked a rational relationship to a governmental interest.") When determining whether the constitutional line has been crossed, the fact finder should consider "the need for the governmental action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm." *Plumeau v. School Dist. No. 40 County of Yamhill,* 130 F.3d 432, 438 (9th Cir.1997).

 Assuming, *arguendo,* that Plaintiffs had a protectable property right, plaintiffs cannot show the deprivation of that interest resulted from an abuse of governmental power of sufficient degree to be deemed a constitutional violation. Entering into the settlement agreement, executing the Madera 2007 Quitclaim, and the Houston Offer of Dedication were not arbitrary and capricious under the Due Process clause. As discussed above, if a public right existed in the roadway, Madera could not quitclaim away the public's right. Madera takes the position, and the Court agrees, that Madera could only quitclaim the interest it possessed in the road, not the public's interests and not the plaintiffs' interest.[20]

Madera has submitted evidence showing that it acted in good faith in an effort to advance legitimate governmental interests. The governmental interest involved was the existence of an uncertain title and rights to a roadway which provided access to residents of the Cascadel Woods subdivision. As shown from the above discussion regarding the roadway, it is entirely uncertain who owns what and to what extend the road exists in its current alignment. In *Shanks,* the court stated that official decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary. *Shanks,* 540 F.3d at 1089; *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 864 F.2d 1475, 1486 (9th Cir.1989) ("mere errors of judgment, or actions that are mistaken or misguided, do not violate due process"). The governmental interest was Madera's desire to protect a private easement, to protect public safety and keep the peace. Houston/Barlow claims ownership to the fee and right of way and threatened to gate the road. They filed suit to do so. Madera elected to settle to extract itself from contentious litigation and preserve passage over the historical road. This conduct does not show that Madera acted in a constitutionally arbitrary or irrational manner.

Further, plaintiffs have not shown an illegitimate reason for Madera's actions. Plaintiff have not shown bias, prejudice or personal animosity by the County against them or any other illegitimate reasons for Madera's action. As to the relevant declarations, plaintiff's "evidence" consists of Stamas' declaration in which he argues that there was no rational basis for Madera's decisions and that he had a right to the roadway. Plaintiffs, however, do not present independent evidence which would create a genuine dispute as to the defendants' intentions and/or motivations. Stamas argues that the Houston Offer of Dedication violates state law and Madera ordinances because it permits a roadway less than 60 feet wide. State and local law violations do not rise to a constitutional

---

20. If the 2007 quitclaim operated as a rejection of the 1969 Offer of Dedication, plaintiffs cannot state a constitutional violation of the rejection of the offer of dedication. As stated above and in prior Court orders, plaintiff does not have a constitutional right in the 1969 Offer of Dedication.

violation. Every state law violation does not give rise to a substantive due process claim: "substantive due process is not a 'font of tort law' that superintends all official decision making." *Shanks,* 540 F.3d at 1089.

Stamas cites *Simi Inv. Co., Inc. v. Harris County, Tex.,* 236 F.3d 240 (5th Cir. 2000), clarified, 256 F.3d 323 (5th Cir.), *cert. denied,* 534 U.S. 1022, 122 S.Ct. 550, 151 L.Ed.2d 426 (2001) for the proposition that Madera "irrationally sought to protect and defend the private interests of the Houstons as stipulated in their privately negotiated Settlement Agreement." (Doc. 147, Plaintiff's opposition p. 13.) In *Simi,* plaintiff acquired commercial property which abutted a street. Plaintiff requested access to the street via a proposed driveway but was rejected by defendant county on the basis that the narrow strip of land separating plaintiff's property from the Street was a county-owned park. The district court granted summary judgment for the plaintiff on the due process claim, which was affirmed on appeal. The court found that, given the historical evidence of the strip of land, the County had invented the existence of the park to block the access by plaintiff and benefit other owners. County did not present evidence that a park had ever been planned and County could not offer any legitimate reason for blocking the access. "Measured against the rational basis test, a nonexistent park used by County officials to interfere with private property interests is clearly arbitrary, capricious, and violative of due process." *Simi,* 236 F.3d at 253–254.

Stamas argues that this case is like *Simi* because Madera's " 'invention' of an illegitimate non-compliant 'offer of dedication' solely to 'enforce' their newly entered private contract is arbitrary and capricious." (Doc. 157, Opposition p. 14.)

*Simi* is distinguishable. In *Simi,* the court found that the county had not acted with a rational basis by "inventing" a park to block access to the street by the plaintiffs. Here, the title to the land and to the right of way is disputed and uncertain. It has been uncertain for longer than plaintiffs have owned their property. Indeed, there is some evidence that parcel maps submitted in the 1950s were denied because the road was disputed. The disputed rights to the road over its long history provides a legitimate governmental interest in protecting public access to the road.

Given that plaintiff's burden of proof on this claim is "exceedingly high" requiring plaintiff to show that defendants' conduct was irrational, almost egregious and amounted to an abuse of power, the Court finds that plaintiff cannot meet this burden on the evidence before it.

### 2. *Procedural Due Process*

Plaintiffs claim a denial of procedural due process because they were not given notice of the Settlement Agreement and Houston Offer of Dedication which, they contend, would reduce their easement rights and restrict their right to maintain the easement.

■ "To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.'" *Shanks,* 540 F.3d at 1090. In *Halverson v. Skagit County,* 42 F.3d 1257 (9th Cir. 1994), the court pointed out that procedural due process claims do not "deal with the substance of the challenged decisions, but with the process by which they were reached," and further points out that due process of law requires notice and opportunity to be heard before a deprivation.

The procedural due process claim hinges upon the existence of deprivation of property rights. The Court has determined

that it cannot rule upon the property right based upon the record before it. Whether process must have been given depends upon whether a Stamas/Castles property right was involved.

 It is undisputed that no process was given to Stamas/Castles for the Settlement Agreement and Houston Offer of Dedication. The County did not provide notice of any sort. The Settlement Agreement was entered during *Houston v. Madera*, Case No SCV 005012, the Houston/Barlow civil action in Madera County Superior Court against Madera County. There is no evidence that a good faith settlement was entered in that litigation. Cal.Code Civ.Proc. § 877.6. The Ninth Circuit has held that governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient. *Halverson v. Skagit County*, 42 F.3d at 1261. This settlement may fall within this kind of governmental decision or it may not. On this record, the Court cannot rule as a matter of law that procedural due process was satisfied.

### 3. *Violation of Equal Protection*

 A basic requirement for a violation of equal protection is that similarly situated property must have been treated differently. *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822 (9th Cir.2003). Equal protection requires that land use decisions be rationally related to a legitimate governmental purpose. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a "class of one" claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073,

145 L.Ed.2d 1060 (2000) (per curiam). To claim a violation of equal protection in a class of one case, the plaintiff must establish that the County intentionally, and without rational basis, treated the plaintiff differently from others similarly situated. *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir.2008).

Stamas contends that (1) he was prosecuted for actions while other persons similarly situated were not so prosecuted, (2) he is restricted from maintenance of the road as it passes over Lot 1, while other portions of the road/homeowners do not have such restriction, and (3) the Houston Settlement and Houston Offer of Dedication treat plaintiffs' property differently. (Doc. 147, Stamas opposition p. 16–17.)

### (A) Rational Basis for Prosecution

 Where an equal protection claim is based on "selective enforcement of valid laws," a plaintiff can show that the defendant's rational basis for selectively enforcing the law is a pretext for "an impermissible motive." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187–88 (9th Cir.1995). Disparate government treatment will survive rational basis scrutiny "as long as it bears a rational relation to a legitimate state interest." *Patel v. Penman*, 103 F.3d 868, 875 (9th Cir.1996), *cert. denied*, 520 U.S. 1240, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997). Although "[s]elective enforcement of valid laws, without more, does not make the defendants' action irrational," *Freeman*, 68 F.3d at 1188, there is no rational basis for state action "that is malicious, irrational or plainly arbitrary." *Armendariz v. Penman*, 75 F.3d 1311, 1326 (9th Cir.1996), *overruled in part on other grounds as stated in Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 852–53 (9th Cir.2007) (holding that plaintiff's substantive due process claim was preempted by other constitutional claims).

■ Stamas has not presented evidence suggesting Madera prosecuted him without a rational basis. *Compare Armendariz*, 75 F.3d at 1327 (plaintiff raised issue of fact of irrational conduct where defendants were motived to devalue plaintiffs' property and acquire it more economically). As shown above, Stamas was prosecuted for performing road work without proper permits. Madera contends that Stamas was prosecuted under facially neutral Madera County Codes. (Doc. 133–1, p. 30.) Stamas acknowledges that the Madera County Codes are facially neutral. (Doc. 147, Stamas opposition p. 16 ("the Codes themselves may be facially neutral, but the County was not neutral in its application of enforcement.")). The Road Commissioner testified that the road work being performed at Stamas' direction was beyond what was considered "routine road maintenance." The Madera ordinance requires permits for the type of work that was performed. Houston/Barlow took photographs, sent them to a deputy County Counsel who independently made the decision to prosecute Stamas for the conduct, after research and some investigation. A governmental body has a rational basis in enforcing its ordinances. *See Armendariz*, 75 F.3d at 1328 ("The City has an obvious interest in preventing safety and sanitation hazards by enforcing the housing code."); *Freeman*, 68 F.3d at 1188 (reasoning that the city reasonably denied a dance permit "for a reason authorized by the city's ordinance").

■ Stamas argues that no one else has been prosecuted for performing road maintenance of the kind with which he was charged. However, he does not present competent evidence on this fact. Stamas offers evidence that the Cascadel Homeowners Association maintained the "road for years," but this evidence does not establish that it was the same road maintenance as was performed by Stamas. "[I]n an equal protection claim based on selective enforcement of the law, a plaintiff can show that a defendant's alleged rational basis for his acts is a pretext for an impermissible motive." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 591 (9th Cir.2008). Stamas has not shown any malice by Madera or pretext for some other improper reason. He does not present evidence of fraud, bribery, or other improper favoritism. While Stamas argues that the prosecution was to "enforce the Houston Offer of Dedication," the fact remains that prosecution was authorized under Madera's ordinance. Selective enforcement of valid laws, without more, does not make the defendants' action irrational. *Freeman v. City of Santa Ana*, 68 F.3d at 1188 (rejecting argument that selective enforcement of facially valid ordinance denied equal protection); *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (" 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' ")[21]

**(B) Rational Basis for Restricting Maintenance of the Road**

■ There is a rational basis for restricting road maintenance solely to Houston/Barlow; the road crosses the Hous-

---

**21.** Stamas relies upon a 2005 letter from Prentice which states, in substance, that the Homeowners' Association has the right to maintain the roadway. The letter does not mention the need to pull permits for road construction. This letter may have been used as a defense to the criminal prosecution, but in this equal protection case, it does not negate the validity of the Madera County ordinance or Madera County's right to enforce its ordinances.

ton/Barlow property. Work done on the road has the potential of impacting Lot 1 from various environmental factors. Indeed, Madera has a rational basis for restricting maintenance work in that there is animosity among subdivision residents about the road and keeping the peace among residents is a rational basis for governmental conduct. Multiple lawsuits have arisen because of the road.

Plaintiffs argue that the Settlement Agreement with Houston and the Houston Offer of Dedication prevents others from maintaining, expanding, or improving the easement access to their property. (Doc. 147, Stamas Opposition p. 11.)

In their opposition papers, plaintiffs do not cite any authority for the proposition that they have a due process right or are protected by an equal protection right for enforcement of easement maintenance rights. California Civ.Code § 845(a) states that an owner of an easement for a private right of way shall maintain it in repair. Section 845(b) also states that if an easement is owned by more than one person that "the cost of maintaining it in repair shall be shared by each owner of the easement ..." Judicial action is authorized if:

> "Any owner of the easement, or any owner of land to which the easement is attached, may apply to any court where the right-of-way is located and that has jurisdiction over the amount in controversy for the appointment of an impartial arbitrator to apportion the cost."

Thus, a civil action is authorized for reimbursement of costs associated with maintaining the easement. Nothing in § 845 authorizes a private right of action. "A statute creates a private right of action only if the enacting body so intended." *Moradi–Shalal v. Fireman's Fund Ins. Companies,* 46 Cal.3d 287, 305, 250 Cal. Rptr. 116, 758 P.2d 58 (1988).

█ Here, a California law does not recognize a protectable interest in the right to maintain an easement. Therefore, the Constitution does not acknowledge such a right.

### (C) Rational Basis for Houston Settlement and Houston Offer of Dedication

Stamas argues that Madera has violated plaintiffs' rights through the Settlement Agreement and related actions with Houston/Barlow. Madera intentionally and without rational basis treated the plaintiff's property differently from other similarly situated property. Stamas argues that by the County's actions the plaintiffs' home is the only property with a 12 foot right of way. (Doc. 147, Stamas opposition p. 15, 17.)

█ In this case, Madera had a legitimate interest in settling a dispute with Houston/Barlow over the disputed area of the road as it runs through the Houston/Barlow property. As shown above, complicated and legally disputed rights to the road exist. Houston/Barlow claimed exclusive rights to the underlying fee, as well as to the right of way. Houston/Barlow also claimed the right to gate the road. The Settlement Agreement was entered into to solidify the right of unobstructed access for the present-day 12 foot road. "Private road agreement may be used to maintain public road that have not been accepted into a county road system." *Hanshaw,* 116 Cal.App.4th at 481, 11 Cal. Rptr.3d 357. This is a rational basis for Madera's action.

### B. Sixth Cause of Action for Breach of Contract

Madera argues the cause of action for breach of contract must be adjudicated in its favor. Madera notes that it was not a named party to the action against Stamas,

and therefore was not a party to a contract. Madera notes that the "contract" arose from the "settlement" of the criminal action against Mr. Stamas, which was brought by the People of the State of California and not the County of Madera. Further, Special Deputy District Attorney Herman was acting as a district attorney and has no authority to enter into any contract on behalf of Madera. (Doc. 133–1, Madera P & A p. 31.) Madera argues that no consideration was given because Madera did not receive any benefit from Stamas agreeing not to do any work on the road.[22]

Stamas argues that, pursuant to the transcript of the resolution of the criminal action, the parties entered into a "Civil Settlement." Stamas argues he was promised "fully code compliant access to his property" through the 60–foot easement. The access has not been performed and plaintiffs have fully performed their obligations.

■ The elements for breach of contract are (1) the existence of a valid contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the plaintiff. *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1489, 49 Cal. Rptr.3d 227 (2006). The formation of a binding contract requires: (1) parties capable of contracting; (2) mutual assent; (3) a lawful object; and (4) sufficient consideration. See Cal. Civ.Code. §§ 1550, 1565.

### 1. *Interpretation of the Language of the Contract*

■ "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." *Weddington Produc-*

*tions, Inc. v. Flick*, 60 Cal.App.4th 793, 810–812, 71 Cal.Rptr.2d 265 (1998). Contract interpretation is solely a judicial function when "based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or a determination was made based on incompetent evidence." *See City of Hope Nat. Medical Center v. Genentech, Inc.*, 43 Cal.4th 375, 395, 75 Cal.Rptr.3d 333, 181 P.3d 142 (2008). Absent evidence indicating the parties intended a special usage, words used in a contract should·be interpreted in their "ordinary and popular sense." Cal. Civ.Code § 1644. In determining whether a provision has a "plain meaning," it must be read in the context of the entire contract: "The whole of a contract is to be taken together, so as to give effect to every part ... each clause helping to interpret the other." Cal.Civ.Code § 1641. Terms are to be interpreted "in their 'ordinary and popular sense,' unless used by the parties in a technical sense or a special meaning is given to them by usage.'" *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 647–648, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003).

■ Here, the parties do not contend that any term of the Settlement Agreement is ambiguous. When terms are unambiguous, California law requires that the mutual intention of the parties is to be "inferred, if possible, solely from the written provisions of the contract." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th at 647–648, 3 Cal.Rptr.3d 228, 73 P.3d 1205. The mutual intention of the contracting parties at the time the contract was formed governs interpretation. Cal. Civ.Code § 1636. "The parties' mutual intent is to be determined, if semantically possible, *solely* from the written provisions of the contract." *AIU Ins. Co. v. Sup. Ct.*,

---

**22.** The Court summarily disposes of this "lack of consideration" argument. All governmental entities have an interest in preserving the peace between neighbors and considering the evidence light most favorable to plaintiffs, this is consideration.

*FMC Corp.*, 51 Cal.3d 807, 822, 274 Cal. Rptr. 820, 799 P.2d 1253 (1990). Therefore, the Court turns to the language used in the Settlement Agreement.

### 2. *The Term "Fully Code Compliant Access"*

In stating the civil settlement on the record before the court, the charges were dismissed in exchange that "Mr. Stamas will agree not to do any maintenance personally as an individual on the subject section of property." (Doc. 131–1, Joint Exh. 38, p. 3.) The agreement provided that Houston/Barlow would maintain that portion of the road: "And the County Roads Commissioner has stated his agreement to contract Mr. Houston, the adjacent property owner, who will perform maintenance on that section of road." (Doc. 131–1, Joint Exh. 38, p. 4.)

In relation to the provision relating to "fully code compliant," the agreement on the record states:

"Mr. Feigel (Stamas' Attorney): . . . And if the road maintenance is not correct, [Houston] will work with the County Road Commissioner to make sure that it is fully County road compliant.

Mr. Stamas does require and the county has promised to provide him with fully code compliant access to his property across subject portion of the property."

The Court: When you say maintenance on property, what do we mean? We are not talking about—

Mr. Feigel: Grading roads, taking care of culverts, putting necessary riprap, removing debris, filling in pot holes, putting rock on the road.

The Court: So repairs or improvements in regard to the physical nature of the property itself?

Mr. Feigel: Correct. (Doc. 131–1, Joint Exh. 38, p. 4.)

 The term of the agreement related only as to the maintenance of the road. The "civil settlement" was entered in connection with the charges against Stamas for conducting road maintenance in violation of County ordinances. By the express terms of the agreement, the agreement provides for *road maintenance* that is fully code compliant. Stamas was charged criminally for conducting road maintenance which did not comply with the County road maintenance ordinance. The settlement agreement provides that Stamas could not perform maintenance but that any work performed on the road would comply with the County code.

Contrary to Stamas' argument, it would be patently unreasonable for any jury to conclude from the words used in the transcript that the County was promising to alter the dimensions of the road. The entire subject of the dispute, and all charges against Stamas, involved the proper maintenance of the road, and whether Stamas had performed maintenance in compliance with County ordinances. The dispute in no fashion involved the dimensions of the road. There is no statement or reasonable inference to be made that the County was promising to alter the road from 12–feet wide to 60–feet wide. The reasonable interpretation is that Stamas was promised road maintenance that was fully County Code complaint. It would be an unreasonable interpretation, in a road maintenance criminal case, to interpret the words "fully code compliant" as the County promising to expand a historical, physically existing 12–foot road into a 60–foot roadway.

Stamas argues that "Stamas understood the agreement to mean fully code compliant access all the way to his home." [23] He

---

**23.** Mr. Stamas states: "One additional important point was included at my request, that

then points out the Madera County Code § 17.32.010 (right of way minimum requirements) state that the minimum requirement for local road right of way is 60 feet wide. (Doc. 134–1, Stamas P & A p. 12; Doc. 147, Stamas P & A p. 17–18.)

▇▇▇▇▇ What Stamas "understood as the agreement" does not raise an issue of fact. "California recognizes the objective theory of contracts, [citation], under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.' " *Cedars–Sinai Medical Center v. Shewry*, 137 Cal.App.4th 964, 980, 41 Cal.Rptr.3d 48 (2006). "The parties' undisclosed intent or understanding is irrelevant to contract interpretation." *Id.* "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Weddington Productions, Inc.*, 60 Cal.App.4th at 811, 71 Cal. Rptr.2d 265. When terms are unambiguous, California law requires that the mutual intention of the parties is to be "inferred, if possible, solely from the written provisions of the contract." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th at 647–648, 3 Cal.Rptr.3d 228, 73 P.3d 1205; Cal.Civ.Code § 1636. The language used in the context of the criminal proceedings does not lead to any reasonable understanding that the road would be physically expanded from 12–feet to 60–feet as part of the settlement. "Fully code compliant" was referenced within the context of road maintenance. That is what Stamas was prosecuted for, failing to perform road maintenance that was fully County code compliant. No reasonable jury could conclude from the transcript that the County was promising to expand Cascadel Road beyond its current physical limits.

### 3. *Authority to Bind*

Madera argues that it was not a party to the "settlement" and Herman had no authority to bind Madera to an expanded road. Madera notes that it was not a named party to the action against Stamas, and therefore was not a party to a contract. Madera notes that the "contract" arose for the "settlement" of the criminal action against plaintiffs, which was brought by the People of the State of California and not the County of Madera. Stamas argues that "Herman was present and acting as an agent for the County." (Doc. 147, Stamas P & A p. 18.)

▇▇▇▇▇ Plaintiffs have not shown, even if the agreement is as plaintiffs allege, that either Deputy District Attorney Huston[24] or Special Deputy District Attorney Herman could so bind Madera. No liability is incurred by the principle for acts of the agent beyond the scope of the agent's actual or ostensible authority, and a third party who deals with an agent and knows of the agency is under a duty to ascertain its scope. *Seneca Ins. Co. v. County of Orange*, 117 Cal.App.4th 611, 13 Cal. Rptr.3d 1 (2004). "One who deals with the public officer stands presumptively charged with a full knowledge of that officer's powers, and is bound at his ... peril to ascertain the extent of his ... powers to bind the government for which he ... is

---

the County would provide fully code compliant access to my home in exchange. I understood this to mean what it says, a fully code compliant road on a fully code compliant right of way, meaning a two lane road on a right of way, sixty feet wide." (Doc. 152, Stamas Decl. ¶ 16.)

24. Shawn **Huston** is a Deputy District Attorney for Madera County and was one of the attorneys on the criminal case. Defendant Gerald **Houston** is the property owner in the Cascadel Woods Subdivision.

an officer, and any act of an officer to be valid must find express authority in the law or be necessarily incidental to a power expressly granted." *Katsura v. City of San Buenaventura*, 155 Cal.App.4th 104, 65 Cal.Rptr.3d 762 (2007)

There is no evidence that either Deputy District Attorney Huston or Special Deputy District Attorney Herman could bind Madera for anything other than what was involved in that litigation at that time— proper road maintenance. There is no evidence that either Huston or Herman had the authority to bind the County to tear up the road and improve the roadway from a width of 12 feet to that of 60 feet. There is no evidence that either Huston or Herman could bind the County to road improvements without approval of the Board or other departments with the County. Thus, even if the agreement is as plaintiffs allege, plaintiffs have not shown that Huston or Herman had the authority to bind Madera.

### CONCLUSION AND ORDER

For the foregoing reasons, the Court orders GRANTS the motions in part and DENIES the motion in part, as follows:

1. The Court GRANTS the County of Madera's and the Board of Supervisors' Motion as to the First Cause of Action for Violation of Substantive Due Process and DENIES the motion as to Procedural Due Process.

2. The Court GRANTS the County of Madera's and the Board of Supervisors' Motion as to the Second Cause of Action for Equal Protection.

3. The Court GRANTS Gerald Houston's and Linda Barlow's Motion as to the Third Cause of Action for Malicious Prosecution.

4. The Court GRANTS Gerald Houston's and Linda Barlow's Motion as to the Fourth Cause of Action for Slander of Title.

5. The Court GRANTS the County of Madera's and the Board of Supervisors' Motion as to the Fifth Cause of Action for Breach of Contract.

IT IS SO ORDERED.